RECEIPT # _____
AMOUNT $ 250
SUMMONS ISSUED Y-3
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE 6-1-05

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. _____

```
                                    )
ROBERT D. PRITCHARD,                )
          Plaintiff,                )
                                    )
v.                                  )
                                    )
TRAFFICCAST, INC.; BIN              )
RAN; AND CONNIE JING LI,            )
          Defendants.               )
                                    )
```

05 CV 11135 M

### COMPLAINT AND JURY DEMAND     MAGISTRATE JUDGE Sorokin

### Introduction

1. Plaintiff Robert D. Pritchard ("plaintiff"), through his counsel of record, hereby brings this action against corporate Defendant TrafficCast, Inc. ("TrafficCast"), and individual Defendants Bin Ran and Connie Jing Li (collectively, "defendants").

### Jurisdiction and Venue

2. Because of the Federal Securities Law claim below, subject matter jurisdiction over defendants is appropriate pursuant to 28 U.S.C. §1331. Subject matter jurisdiction over the state-law claims below is properly maintained under 28 U.S.C. §1367(a).

3. In addition, plaintiff submits that complete diversity exists, such that federal subject matter jurisdiction is proper, in the alternative, under 28 U.S.C. §1332(a)(1). Plaintiff is a resident of Massachusetts, the individual defendants are residents of Wisconsin, and the corporate defendant is headquartered in Wisconsin and incorporated either in Wisconsin or Delaware.

4. Venue is proper in the Eastern District of the United States of the District Court of Massachusetts, pursuant to 28 U.S.C. §1391(b)(2) if under a federal question jurisdiction; and pursuant to 28 U.S.C. §1391(a)(2) if under diversity jurisdiction.

{00054865.DOC}                                                                              1

## The Parties

5. Plaintiff Robert D. Pritchard was a Director and Executive Vice President of defendant TrafficCast, Inc. Plaintiff is a resident of Foxboro, Massachusetts.

6. The corporate defendant, TrafficCast, Inc. was formerly known as TrafficCast.com, Inc. Its principal address is 2802 Coho Street, Suite 102, Maidson, WI 53713. It was (and is) a privately owned startup company holding patents on systems that predict traffic patterns and timing anywhere in the United States. TrafficCast regularly did business in Massachusetts, and had a Boston office from 2000 until at least 2002.

7. Individual defendant Bin Ran, Ph.D, was and is President, CEO, registered agent for service of process, and part-owner of TrafficCast, Inc.

8. Individual defendant Connie Jing Li, Ph.D and P.E., was and is Chief Operating Officer and part-owner of TrafficCast, Inc.

## Factual Background

9. The two individual defendants (Ran and Li) founded the corporate defendant, along with co-founder Jerome Chen, in or about November 1999. Following a period of part-time effort beginning in or about November 1999, plaintiff joined them as a company founder in or about February 2000. Pritchard also also became a member of TrafficCast's management team: Pritchard was given the title Executive Vice President. He led the market and sales team for the company. Plaintiff Pritchard was also a Director of the closely held company.

10. The founders, including Pritchard, contributed their labor, deferred salaries and other compensation, contributions toward company expenses, as well as intellectual property, to the formation of the company. TrafficCast's development was funded by deferred salaries and by stock options for the development team, which included plaintiff Pritchard. According to the company's records, the company was valued at between $8.4M and $18M. It was the founders, including plaintiff Pritchard, who held 100 percent of the company's value.

11. Defendants promised plaintiff an annual salary of $110,000.

12. Defendants Ran and Li repeatedly made written and oral representations to plaintiff Pritchard that he was a founding partner, director, and Executive Vice President of defendant TrafficCast. Further, they represented orally to plaintiff that he would be entitled to an annual salary of $110,000, reimbursement of travel and other business expenses, and that he was entitled to 1,848,000 shares of TrafficCast.

13. Between November 1999 and October of 2002 (Pritchard worked part-time from November 1999 to February 2000), the plaintiff worked hard to promote and develop TrafficCast, deferring substantial salary and benefits in the approximate amount of $270,000 (not including interest). Pritchard developed business relationships and materials that are the foundation of Defendant's current business enterprise.

14.     Additionally, the defendants promised plaintiff 22% of TrafficCast (as translated into 1,848,000 shares of TrafficCast and described in defendant's business records), in return for his hard work and expertise in developing the business. On or before 5/14/00, defendant Ran emailed a table of Stock Commitments for Founders and Developers, which reflected that 1,848,000 shares of TrafficCast had been committed to founder Robert Pritchard.

15.     Plaintiff paid for various company expenses and costs during the development of TrafficCast, out of his own pocket. He has not yet been reimbursed for all of these costs and expenses. Defendants now owe Pritchard unpaid travel and business expenses in the approximate amount of $25,000 (not including any interest).

16.     In or about June 2002, defendant Ran began to distance himself and defendant TrafficCast from plaintiff. In October 2002, defendant Ran provided vague explanations such as that they were "going on different routes." Despite plaintiff's repeated written and verbal requests for an explanation and/or a settling up of money due to plaintiff, defendants never provided either.

**Count I:  Violations of Federal Securities Laws, Against Defendants**

17. Plaintiff incorporates by reference, as if fully set forth herein, Paragraphs 1 through 16.

18.     Plaintiff was issued 1,848,000 shares of TrafficCast in 2000 in consideration for his efforts and expertise in developing the startup company.

19.     Defendants misrepresented to plaintiff that he would remain a Director and Executive Vice President of TrafficCast entitled to an annual salary of $110,000, reimbursement of travel and related business expenses, and that he would be entitled to these 1,848,000 shares, with each share having a par value of $1.00. The stock issued to plaintiff was issued in addition to his salary.

20.     The individual defendants Ran and Li intentionally misrepresented these facts, in that they never intended to give plaintiff the salary they promised him, reimburse him for incurred travel and related business expenses, or give him the shares they issued to him in TrafficCast.

21.     Plaintiff reasonably relied on promises from the individual defendants Ran and Li, in working for TrafficCast for more than two years, spending his own money for the company's costs and expenses, accepting deferred salary in substantial amounts, and suffering substantial detriment in return for a substantial gain of over $2M in ultimate profits. TrafficCast has a good product, valuable intellectual property, and hardworking and experienced personnel developing the company; thus, it was reasonable for the plaintiff to believe that the company was (and is) a viable startup, such that he was willing to defer salary and except valuable shares for his work and expertise.

22. As a result of defendants' intentional misrepresentations to plaintiff, plaintiff has lost over $2M in lost shares, salary, expenses, and costs.

### Count II: Common-Law Fraud, Against Defendants Ran and Li

23. Plaintiff incorporates by reference, as if fully set forth herein, Paragraphs 1 through 22.

24. Defendants Ran and Li misrepresented to plaintiff that he would be paid certain salary amounts, totaling approximately $270,000; that he would be reimbursed for his out-of-pocket expenses incurred on behalf of TrafficCast, totaling approximately $25,000; and that he would have 1,848,000 shares of TrafficCast, issued at a par value of $1.00.

25. At the time Ran and Li made these misrepresentations to plaintiff, Ran and Li knew that they were not true, and never intended to give plaintiff the benefits of his labors. Rather, Ran and Li intended to induce plaintiff to work for more than two years for a deeply discounted salary; to spend his own money on TrafficCast expenses for which he would not be reimbursed; and to forego more promising opportunities, in order to get the benefit of plaintiff's considerable expertise in developing the startup business.

26. Plaintiff reasonably relied on the promises of Ran and Li, and forewent other business opportunities in order to work for TrafficCast for more than two years; contributed his knowledge and expertise to developing TrafficCast; and contributed considerable effort and specialized knowledge to developing the business.

27. The misrepresentations by Ran and Li were material. They went to the heart of plaintiff's business relationship with defendant TrafficCast.

28. At the time they made these misrepresentations, Ran and Li knew that they were false, and intended to induce plaintiff to rely on them to his detriment, in order to cause plaintiff to work for free for TrafficCast, to contribute his own money towards the development of TafficCast and toward expenses incurred in the development of TrafficCast.

29. Plaintiff's detrimental reliance on Ran's and Li's misrepresentations in this regard, was reasonable. TrafficCast had (and has) considerable potential as a startup, valuable intellectual property, and convincing (if insincere) founders.

30. As a result of defendants' intentional misrepresentations to plaintiff, plaintiff has lost over $2M in lost shares, salary, expenses, and costs.

### Count III: Breach of Fiduciary Duty, Against Defendants

31. Plaintiff incorporates by reference, as if fully set forth herein, Paragraphs 1 through 30.

32.  Defendants Ran and Li owed plaintiff a fiduciary duty. In a close corporation such as TrafficCast, the relationship among stockholders must be one of trust, confidence, and absolute loyalty if the enterprise is to succeed. In a close corporation, the stockholders owe each other a fiduciary duty of the utmost good faith and loyalty.

33.  Defendant Ran and Li breached their fiduciary duty owed to plaintiff by freezing him out of the company and denying him his salary, reimbursement for incurred travel and related business expenses, and shares of the company that they had promised him.

34.  Defendants' breach of fiduciary duty owed to plaintiff caused plaintiff to suffer monetary damages of over $2M.

### Count IV: Breach of Contract, Against Defendants

35.  Plaintiff incorporates by reference, as if fully set forth herein, Paragraphs 1 through 34.

36.  Plaintiff and defendants had an oral contract of employment and an oral contract under which plaintiff stood to receive 1,848,000 shares of TrafficCast for his efforts and expertise. These contracts were memorialized in many different writings, including but not limited to, TrafficCast Business Plans.

37.  Plaintiff performed his duties under the subject contracts. He worked on a full-time basis for TrafficCast for more than two years, from February of 2000 to October of 2002. When working for TrafficCast, he expended his best efforts and contributed considerable experience and expertise to the development of the new company.

38.  He worked for TrafficCast in consideration for an annualized salary of $110,000, which was deferred by mutual agreement; with the understanding that any out-of-pocket expenses on behalf of TrafficCast would be reimbursed by TrafficCast; and with the understanding that he owned 1,848,000 shares of TrafficCast, which would later become valuable, and would later be valued at about $1.8M.

39.  Defendants breached their contract with plaintiff. They owe him approximately $270,000 in deferred salary, about $25,000 in unreimbursed expenses, and 1,848,000 shares of TrafficCast.

40.  Plaintiff has been damaged by defendants' breach of contract, in the amount of over $2M.

41.  Demand was made upon defendants for reimbursement of these damages and for the stock. A copy of the demand is attached hereto. Defendant has failed to respond to the demand.

### Count V: Quantum Meruit Recovery Against Defendants

42. Plaintiff incorporates by reference, as if fully set forth herein, Paragraphs 1 through 41.

43. Plaintiff worked diligently and effectively, using his best efforts, for TrafficCast from February of 2000 until at least October of 2002. As detailed above, plaintiff was promised an annual salary of $110,000, reimbursement of out-of-pocket expenses incurred for TrafficCast, and 1,848,000 shares of TrafficCast.

44. However, in the alternative, should there be a finding that no contract existed, plaintiff is still entitled to recover his actual damages based on a quasi-contract, or quantum meruit recovery. Otherwise, plaintiff would have worked for more than two years at a deeply discounted salary, and defendants would have been unjustly enriched by plaintiff's work for TrafficCast.

45. Under this Count for quantum meruit recovery, plaintiff is entitled to recover approximately $295,000 in unpaid salary and benefits and unreimbursed expenses.

### Count VI: Wrongful Termination, Against TrafficCast

46. Plaintiff incorporates by reference, as if fully set forth herein, Paragraphs 1 through 45.

47. If plaintiff is considered to have been an employee of TrafficCast between February of 2000 and at least October of 2002, then plaintiff has not received his compensation for past services and salary already earned, in the amount of approximately $270,000.

48. If TrafficCast is considered to have been plaintiff's employer, his employer owes him a duty of good faith and fair dealing. Under such duty, his employer must pay plaintiff for salary already earned in its employ.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor as follows:

1. Granting him damages in the approximate amount of $2,143,000 as detailed above;

2. Granting plaintiff multiple or punitive damages because of defendants' intentional fraud;

3. Granting plaintiff, under applicable law, his attorneys' fees, prejudgment interest, post-judgment interest, and/or costs; and

4. Awarding such other and further relief as this Court deems just and proper.

## JURY DEMAND

Demand is hereby made for trial by jury on all issues so triable.

                                    PLAINTIFF, ROBERT D. PRITCHARD,
                                    By His Attorneys,

                                    MICHIENZIE & SAWIN, LLC

Dated: 5/31/05       By: _____
                                    Paul Michienzie – BBO NO: 548701
                                    John C. Barker – BBO NO: 637406
                                    745 Boylston Street, 5th Floor
                                    Boston, MA 02116-2636
                                    Tel: 617-227-5660

Paul Michie

*Michienzie & Sawin LLC*

101 Merrimac Street
Boston, Massachusetts
02114

Telephone
617 227-5660

Facsimile
617 227-5882

Email
pm@masatlaw.com

August 21, 2003

VIA CERTIFIED MAIL - RRR
Bin Ran, PhD, President and CEO
Connie Jing Li, PhD, P.E., COO
TrafficCast, Inc.
c/o Kevin J. Palmersheim, S.C.
Haley Palmersheim, S.C.
1424 N. High Point Road, Suite 202
P.O. Box 628005
Middletown, WI 53562-8005

Re: Robert D. Pritchard

Dear Mr. Ran and Ms. Li:

Please be advised that I serve as counsel for Robert D. Pritchard. I am writing on his behalf to demand payment of unpaid travel and business expenses totaling $4,987.78, miscellaneous expenses totaling $21,163.74, unrealized salary and benefits in the amount of $286,750.00 and deliver possession of 1,848,000 in shares of TrafficCast, Inc. (hereafter the "Company"), representing Mr. Pritchard's founder's share in the Company. This letter shall also serve as a demand pursuant to Mass. General Laws, Chapter 93A for the unfair and deceptive acts and practices committed by each of you individually and as officers of the Company.

**Background**

In late 1999 you began discussions and ultimately in the Spring of 2000 you entered into an agreement with Mr. Pritchard concerning his ownership in the Company, ultimately to be known as TrafficCast.Com, Inc. Mr. Pritchard understood that the Company was devoted to the deployment and development of advanced traveler information systems and related business. Specifically, Mr. Ran engaged the services and expertise of Mr. Pritchard to assist Mr. Ran in the development of the business of Company, through, amongst other things, investment solicitations. As part of the growth of the Company, a Boston office was formed.

{00039968.DOC}

MICHIENZIE & SAWIN LLC

Bin Ran, PhD., President and CEO
Connie Jing Li, PhD, P.E., COO
August 21, 2003
Page 2

  In exchange for Mr. Pritchard's services and for the expenditure of his own assets, Mr. Ran agreed to provide Mr. Pritchard with 1.848 million shares in the Company and to make him an officer and director of the Company. Indeed, Mr. Ran prepared corporate documents in which Mr. Pritchard was identified as Vice President and Director. These documents set forth an annual salary of $110,000.00 for Mr. Pritchard. These terms were memorialized in a Memorandum of Understanding entered into on July 7, 2000. Further, as an inducement to enlist the services and financial resources of Mr. Pritchard, Mr. Ran represented that the estimated value of the intellectual property of Company to be $8,410,000.00. Mr. Ran also represented that the company had assets of $9,338,061.41.

  Based on the represented value of the company, the agreement to provide Mr. Pritchard with a founder's share of 1.848 million shares in the Company (as set forth in numerous business plans prepared by Mr. Ran), and Mr. Pritchard's appointment as Vice President and Director, Mr. Pritchard set forth to provide his services and financial resources to promote the interests of the Company, including but not limited to investment solicitations. At the same time, Mr. Pritchard was asked, and expected, to incur expenses and to defer compensation until a later date.

  In the course of providing services to the Company, my client was a recipient of numerous documents generated by TrafficCast in which the value and the number of shares agreed upon was confirmed. As early as August 18, 2000, the Company represented to investors that the share price was $1.00. The Company also represented in public announcements that its management would be expanded. For example, in a company application for the Wisconsin Venture Fair, the Company represented in the Summer of 2000 that "TrafficCast management team will be expanded with CEO, CFO and Vice President, Engineering." The Company also represented that "Board of Directors and Advisory Boards are being assembled." More importantly, the company represented "current development and marketing activities are being funded by continued contributions of the management team, deferred salaries by the management team, and stock options for the development teams."

  On numerous occasions, Mr. Ran wrote to my client confirming his position as a founder. For example, in an email dated January 1, 2001, Mr. Ran identified the founders, one of whom is my client. Throughout this email, my client's responsibilities were outlined, including business plan updates, employee handbooks, marketing, news releases, website updates and articles. My client was also identified as one person being in charge of fundraising.

{00039968.DOC}

MICHIENZIE & SAWIN LLC

Bin Ran, PhD., President and CEO
Connie Jing Li, PhD, P.E., COO
August 21, 2003
Page 3

      In addition, there were other documents identifying Mr. Pritchard as Executive Vice President and a member of the management team. One document dated January 29, 2001, titled TrafficCast Update for John O'Brien, printed on Company stationary, identified Mr. Pritchard as Executive Vice President. On at least one occasion, Ms. Li and my client had discussions concerning officer liability insurance that would cover my client.

      Further, in the years 2000, 2001 and 2002, business plans were generated on behalf of the Company in which my client was identified as a founder and owner of a share of 8.4 million dollars of stock in the Company. These documents identify my client as one member of the management team who deferred his salary in order to help develop and market activities on behalf of the Company. Indeed, the company identified current expenditures in July of 2000 as $130,000.00 per month. Many of these expenses were deferred salaries and actual expenses incurred by founders and members of the management team, including my client. My client was also identified as a Board Member, a member of the management team and an individual whose industry expertise added to the value of Company. Specifically, in the January 22, 2002 Business Plan Executive Summary, under the title TrafficCast Objectives, the Company had this to say about my client and others: "In order to maximize the value of TrafficCast patented processes, applications and operations over a 5-7 year horizon, TrafficCast plans to: . . . add to the traffic industry expertise of its founding partners (Professor Bin Ran; Connie Li, PhD, P.E.; Jerome Chen; and Robert D. Pritchard) . . ."

**Expenses Incurred and Compensation Deferred**

      In the course of providing his services and expertise to the Company, Mr. Pritchard incurred financial costs and deferred salary exceeding $325,000.00. As set forth about, the founders and officers expended their own resources and time in exchange for deferred payment of the expenses and compensation and shares in the Company. My client's expenditures are broken down as follows:

    1.    Outstanding Travel and Business Expenses: **$4,987.78**

Seven travel expense invoices for $7,210.04 were submitted to Ms. Li during 2002; $2,223.26 was paid on May 2, 2002. All expenses were approved in advance and payment was promised to be made in 2002.

{00039968.DOC}

MICHIENZIE & SAWIN LLC

Bin Ran, PhD., President and CEO
Connie Jing Li, PhD, P.E., COO
August 21, 2003
Page 4

    2.    Unreimbursed Expenses: **$21,163.74**

During 2000-2002, Mr. Pritchard expended personal resources totaling **$21,163.74** for office and other expenses based on the promise of cash reimbursement or additional stock in the Company.

    <u>2000:</u> **$7,290.34**

    (Supplies: $1,438.27 Mobile Internet: $190.45, Telephone: $4,036.62; Auto: $1,625.00)

    <u>2001:</u> **$9,896.86**

    (Supplies: $1,473.28; ITS America/Miami Materials: $2,224.04; Mobile Internet: $237.95; Telephone: $4,336.59; Auto: $1,625.00)

    <u>2001 (January-October):</u> **$3.976.54**

    (Supplies: $1,116.14; Mobile Internet: $150.18; Telephone: $1,491.47; Auto: $1,218.75).

    3.    Unrealized Salary and Benefits: **$286,750.00**

During 2000-2002, Mr. Pritchard deferred income in accordance with the agreement with the Company. This deferred salary was to be paid at a later date or converted into TrafficCast equity based on the rate consistently stated in the Company's Business Plans -- $1.00 per share.

    <u>2000:</u> **$105,000.00**

    Total Salary and Benefits: $165,000.00 less Salary Paid: ($60,000.00)

    <u>2001:</u> **$75,000.00**

{00039968.DOC}

MICHIENZIE & SAWIN LLC

Bin Ran, PhD., President and CEO
Connie Jing Li, PhD, P.E., COO
August 21, 2003
Page 5

        Total Salary and Benefits: $165,000.00 less Salary Paid: ($90,000.00)

        <u>2002 (January-October)</u>: **$88,750.00**

        Total Salary and Benefits: $123,750.00 less Salary Paid: ($30,000.00)

4.    Unreimbursed Payments for Graphic Design Work:

Mr. Pritchard arranged for the preparation of the Company's corporate identity (logo, business cards, web-site artwork, letterhead, promotional materials, etc.). Payments for these efforts were deferred and future compensation was agreed as either future cash payments or additional Company stock.

5.    Founder's Share Due: 22% of 8.4 Million founder's shares

        (22% of 8.4 million founders' shares) is 1,848,000 shares of TrafficCast stock.

**Damages and Liability**

On April 10, 2003, in response to Mr. Pritchard's inquiry concerning payment of some of the above expenses, your counsel wrote to Mr. Pritchard and indicated that he "performed limited services," was "supposedly working full-time as an independent contractor" for the Company starting in April 2000, that his services were "terminated in June 2002" and that he was "over-paid." There is no dispute, therefore, that Mr. Pritchard performed services for the Company for which he was to be compensated. However, Mr. Pritchard has not been repaid for the expenses incurred or the compensation and stock, as agreed, and there is no basis on which to refuse to compensate and repay him.

Your refusal to pay as agreed, at the least, constitutes breach of contract. However, the refusal to recognize Mr. Pritchard's right to compensation and his right to an equity position in the Company is fraudulent, which is an actionable violation of the Massachusetts Unfair Business Practices Act, M.G.L. ch. 93A, section 11 ("Chapter 93A"). Violation of Chapter 93A entitles Mr. Pritchard to costs, up to double or treble damages, and attorneys' fees.

{00039968.DOC}

MICHIENZIE & SAWIN LLC

Bin Ran, PhD., President and CEO
Connie Jing Li, PhD, P.E., COO
August 21, 2003
Page 6

    My client was fraudently induced by the Company to enter into an agreement to provide his expertise and services in exchange for a promise of deferred payment of expenses and compensation and a founder's share in the Company which the Company never intended to fulfill. Despite my client's performance, and the great and personal and financial expenditures incurred on behalf of TrafficCast, you have refused to pay Mr. Pritchard for the expenses he incurred, the promised deferred compensation and the equity position or founder's share in the Company. This refusal has occurred despite the Company's success with Noftac and Gannett Flemming, which are directly attributable to Mr. Pritchard's performance. What is most incredible is that Mr. Ran indicated that he simply chose "to go onto a different route." Such conduct is unlawful and is a violation of Chapter 93A.

    I hereby demand immediate payment of $325,000.00 plus delivery of 1.84 Million shares of stock in the Company.

Very truly yours,

Paul Michienzie

PM/pcb

cc:    Robert D. Pritchard

{00039968.DOC}

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**DEFENDANTS**

(b) County of Residence of First Listed Plaintiff: **Norfolk County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Paul Michienzie, Esq.
John C. Barker, Esq.
745 Boylston Street
Boston, MA 02116

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☒ 850 Securities/Commodities Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / Habeas Corpus: | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Defendants violated federal securities laws (Section 10b-5) committed fraud, and breached contract and covenant of good faith with plaintiff.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): n/a

JUDGE _____

DOCKET NUMBER _____

DATE: 6/1/05

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Pritchard v. TrafficCast, Inc.__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   - [ ] I. 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.
   - [X] II. 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
         740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases
   - [ ] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
         315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
         380, 385, 450, 891.
   - [ ] IV. 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
         690, 810, 861-865, 870, 871, 875, 900.
   - [ ] V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   __n/a__

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]   NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]   NO [X]
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]   NO [X]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]   NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [X]   NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [X]   Central Division [ ]   Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [ ]   Central Division [ ]   Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __John C. Barker__
ADDRESS __Michienzie & Sawin LLC, 745 Boylston Street, Boston, MA 02116__
TELEPHONE NO. __(617) 227-5660__

(CategoryForm.wpd - 5/2/05)