IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ROBERT D. PRITCHARD,

        Plaintiff,

vs.

TRAFFICCAST, INC., BIN RAN,
and CONNIE JING LI,

        Defendants.

Case No. 05CV11135MLW

### AFFIDAVIT OF JING (CONNIE) LI IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION OR TO TRANSFER VENUE

Jing (Connie) Li, being first duly sworn, on oath deposes and says as follows:

1. Your affiant is one of the defendants in the above-captioned matter. I am also an officer, director and founding shareholder of TrafficCast, Inc. This Affidavit is submitted in support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and, Alternatively, To Transfer Venue. I have personal knowledge of the statements herein.

2. My Husband, Bin Ran, and I incorporated TrafficCast, Inc. as a Wisconsin corporation in July of 1999, under the name TrafficCast.com, Inc. We changed the name in 2001 to TrafficCast, Inc. ("TrafficCast"). TrafficCast is in the business of providing traffic information, including real-time and predictive traffic travel times.

3. Bin Ran and I were the initial shareholders in the corporation. We have resided in Wisconsin since 1995 and TrafficCast has been located in Madison, Wisconsin since its formation in 1999.

4. I first met Mr. Pritchard while attending a project meeting involving his previous employer. This meeting did not take place in Massachusetts. I believe the meeting was in 1999.

5. Pritchard subsequently contacted us and then came to Madison in November of 1999 to discuss a business relationship with TrafficCast.

1

6. After meeting with Mr. Pritchard in Madison, Wisconsin in November of 1999, February of 2000, and at the end of March of 2000, we agreed to have him assist us as an independent contractor to raise venture capital, prepare a business plan, draft an employee handbook, update our website and assist with marketing.

7. We retained Mr. Pritchard as an independent contractor as a result of him contacting us and our meetings in Wisconsin. The state where he lived was unrelated to our decision. TrafficCast terminated any further business relationship with Mr. Pritchard in approximately June of 2002.

8. Mr. Pritchard's territory was all of the United States, although much of his work was conducted in Wisconsin. He was not retained because he had specific contacts or prospective customers in Massachusetts.

9. TrafficCast had and has no specific intent to conduct business in Massachusetts.

10. Mr. Pritchard informed me that, while acting as an independent contractor for TrafficCast, Mr. Pritchard also acted as an independent contractor for at least one other company.

11. TrafficCast has no clients within the State of Massachusetts and has had no clients in Massachusetts since the inception of the corporation's business.

12. TrafficCast has never received any revenue or made any sales in the State of Massachusetts.

13. TrafficCast never knew about, authorized or paid rent for any office in Massachusetts. Mr. Pritchard worked as an independent contractor out of his home in Foxboro.

14. No letterhead or business cards evidencing a Massachusetts office have ever been authorized or seen by me.

15. TrafficCast has never conducted business in Massachusetts, has never filed any income tax forms in the State of Massachusetts, and has never been registered as a foreign corporation authorized to do business within the State of Massachusetts.

16. No employee other than Bin Ran and I has attended any meetings within the State of Massachusetts for the benefit of TrafficCast.

17. I have personal knowledge concerning the business conducted by TrafficCast and the trips made by Mr. Pritchard to Wisconsin and incorporate by reference the

statements in Bin Ran's affidavit about Mr. Pritchard's trips to Wisconsin and our lack of business in Massachusetts.

18. Other than living in Massachusetts for a year or so in 1994 and 1995, I have only been to Massachusetts on three occasions. I attended the Intelligent Transportation Society Conference on April 30-May 3, 2000, with Bin Ran. I was also in Boston on June 17-18, 2002 to visit IBI Group. IBI Group has never been a client of TrafficCast and they were not solicited to be a client at the time. My meeting with IBI Group was unrelated to TrafficCast.

19. When Mr. Pritchard invited us to come to Foxboro to meet his family and an attorney (Bruce Elstein) that he was recommending to us, Bin Ran and I did fly out to Massachusetts. This meeting, which was purely social, took place at Mr. Pritchard's home in April of 2000.

20. Bruce Elstein, a personal friend of Mr. Pritchard, is an attorney licensed to practice in Connecticut, but not licensed in Massachusetts. (I have attached a copy of the letter and Mr. Elstein's Martindale Hubble listing that he gave to us during that visit.) We did not discuss any specific client or prospective client while at Mr. Pritchard's home nor did we agree that Mr. Elstein would do any work for TrafficCast. Mr. Elstein did provide us with a brochure about his firm.

21. All of TrafficCast's corporate records, including contracts, shareholder records, board of directors minutes and notes concerning meetings with clients and potential clients are located in Wisconsin.

22. Until May of 2005, TrafficCast was authorized by the State of Wisconsin to issue no more than 9000 shares, all of which were owned by Bin Ran and me. Mr. Pritchard was never issued any shares in TrafficCast. The corporate records will also verify these facts.

23. TrafficCast currently has six employees, not including Bin Ran and me. In addition, TrafficCast currently uses the services of three independent contractors on a regular basis.

24. From 1999 until 2003, TrafficCast had no employees other than Bin Ran and me. I do own another company named TranSmart Technologies, Inc. ("TranSmart"), and

three employees of TranSmart provided some limited services for TrafficCast from 1999 until 2003.

25. The three TranSmart employees were Jerome Chen, Jessica Liu and Bridget Barrett, all of whom are Wisconsin residents. Ms. Barrett and Ms. Liu are still employed by TranSmart and Mr. Chen is now employed by TrafficCast.

26. Ms. Barrett, Mr. Chen and Ms. Liu all met with Mr. Pritchard at times on his trips to Wisconsin, including being present at some of the meetings outlined in Bin Ran's affidavit where he refers to TrafficCast staff.

27. I have read the foregoing 26 paragraphs and attest that they are true and correct based on my personal knowledge.

Dated this 26th day of September, 2005.

TRAFFICCAST, INC.

_____
Jing (Connie) Li

STATE OF WISCONSIN  } SS
COUNTY OF DANE      }

Subscribed and sworn to before me this 26th day of September, 2005.

_____
Notary Public, State of Wisconsin
My Commission: is permanent

3817.007C.doc

CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail by hand.

4

# ELSTEIN AND ELSTEIN, P.C.
ATTORNEYS AT LAW
SUITE 400
1087 BROAD STREET
BRIDGEPORT, CONNECTICUT 06604-4231
(203) 367-4421

HENRY ELSTEIN*
BRUCE L. ELSTEIN

*ALSO ADMITTED IN NEW YORK

MAURICE J. MAGILNICK
1940-1983

TELECOPIER (203) 366-8615

TrafficCast                                April 7, 2000

## LEGAL SERVICES OUTLINE AND GENERAL PROPOSAL

By way of background, we are enclosing biographical material from the latest edition of Martindale-Hubbell Law Directory, an attorney rating service that awarded our firm its highest rating for legal ability and adherence to professional standards. Martindale-Hubbell includes our firm in its exclusive Bar Register of Preeminent Lawyers -- a guide to the most prestigious firms from across the United States.

We are interested in representing firms in all aspects of corporate and business law, including financing, mergers and acquisitions, licensing, the lease and purchase of real estate, preparation and review of employment and vendor/vendee contracts, protection of trade secrets and commercial litigation.

We understand TrafficCast is looking for counsel to assist it in areas in which we have a great deal of experience. We have participated in financing transactions for clients ranging from real estate mortgaging, asset based financing and mezzanine financing to mortgage backed securities and private placement offerings with insurance companies and other large institutional lenders.

It is anticipated that a substantial amount of time will be devoted to:

1. Review of the existing structure of the company and making suggestions to accommodate for future plans;
2. Preparation, negotiation, review and revision of agreements to license or acquire the important assets for the company's use in its anticipated business;
3. Preparation, negotiation, review and revision of employment agreements with key employees
4. Preparation, negotiation, review and revision of confidentiality agreements; and

04/07/2000
Page 2

5.  Preparation, negotiation, review and revision of contracts with vendors and vendees to facilitate the company's business.

The fee for contract review, licensing agreements and general advice and counsel relating to corporate matters is based upon our usual hourly rate then in effect. The same is true for matters concerning the management and trial of any commercial litigation.

It is difficult to accurately predict the anticipated legal expense for the above work since it depends largely upon the magnitude of our involvement. In the beginning, we would suggest that we become involved intensively for the first few months, devoting on average of fifteen (15) hours per week. Thereafter, the scope of the work can be reviewed and an appropriate plan instituted to maximize the benefit the company can achieve from our services.

The legal fee for a typical mezzanine financing package with a venture capitalist, which is usually a prelude to an initial public offering, will customarily run between 3/4% and 1% of the amount of the financing plus between .15% and 1/4% for the attorney's opinion letter. The fee for the due diligence, negotiations and contract preparation and closing for a merger or acquisition would also be approximately 1% of the purchase price.

As you are of course aware any attorney/client relationship is based largely upon the people involved. As such, we believe it would be good to meet with you personally if you wish to explore further the engagement of our firm and the particulars of your needs and how we can meet them.

Sincerely,

Bruce L. Elstein

BLE:gy
Enclosure

# ELSTEIN AND ELSTEIN, P.C.

*SUITE 400*
*1087 BROAD STREET*
**BRIDGEPORT, CONNECTICUT 06604-4231**
*Telephone: 203-367-4421*
*Telecopier: 203-366-8615*

*Trials and Appeals emphasizing Personal Injury and Commercial Law, Real Estate Acquisition; Negotiation and Financing, Domestic Relations, Debt Restructuring.*

*(This Listing Continued)*

HENRY ELSTEIN, born Bridgeport, Connecticut, April 19, 1934; admitted to bar, 1959, Connecticut; 1985, New York. *Education:* Yale University (B.A., 1956; LL.B., 1959). Lecturer, "Mechanics Liens," Connecticut Bar Association, 1978. Deputy Moderator, Fairfield, Connecticut Representative Town Meeting, 1969-1971. Chairman: Committee on Legislation and Administration, 1965-1967; Committee on Public Works and Planning, 1969-1973, Fairfield, Connecticut Representative Town Meeting. Member, 1979-1984 and Vice-Chairman, 1981-1984, Fairfield, Connecticut Economic Development Commission. Member, Mayor's Task Force on Historic Resources, Bridgeport, Connecticut, 1987-1989. Member, Board of Directors, Child Guidance Center, 1990—. *Member:* Bridgeport (Chairman, Committee on Continuing Legal Education, 1984-1985), Connecticut, New York State and American Bar Associations. *REPORTED CASES:* Nash v. the Weed & Duryea Company, 236 Conn. 746 (1996); Kennedy v. Kennedy, 177 Conn. 47 (1979); Berg v. Berg, 24 Conn. App. 509 (1991). *PRACTICE AREAS:* Real Estate; Real Estate Acquisition; Debt Restructuring; Negotiating and Financing; Mechanics Liens; Domestic Relations; Corporate; Trials and Appeals. *Email:* milport@aol.com

BRUCE L. ELSTEIN, born New Haven, Connecticut, April 10, 1961; admitted to bar, 1986, Connecticut; 1987, U.S. District Court, District of Connecticut. *Education:* Skidmore College (B.S., 1983); Hofstra University (J.D., 1986). Member and General Counsel, Board of Trustees, Greater Bridgeport Symphony, 1988-1996; Vice President, 1996—. Associate Director, Carlson Festivals, 1988-1992. Member, Court Appointed Committee on Foreclosures. *Member:* Bridgeport (Chairman, Unauthorized Practice of Law Committee, 1992-1993), Connecticut (Member, Sections on: Commercial Law and Bankruptcy; Real Estate) and American Bar Associations; The Association of Trial Lawyers of America; Connecticut Trial Lawyers Association. *REPORTED CASES:* Sullivan v. Nameaug, 233 Conn. 213 (1995); L&G Associates v. Danbury ZBA 40 Conn. App. 784 (1996); The Cadle Company of Connecticut v. C.F.D. Development Corporation, et al, 44 Conn. App. 409 (1997); Booth v. Flanagan, 19 Conn. App. 413 (1989). *PRACTICE AREAS:* Personal Injury; Defamation; Commercial Law and Litigation; Real Estate; Mechanics Lien; Condominium; Trials and Appeals. *Email:* brarol@aol.com

REPRESENTATIVE CLIENTS: The Bridgeport Lumber Co., Inc.; The Paint Products Company; Scott Swimming Pools, Inc.; Shea's Auto World, Inc.; Todd Combustion, Inc.; WD Capital Holdings, LLC.
REFERENCES: Lafayette American Bank and Trust Company.
APPROVED ATTORNEYS FOR: Connecticut Attorneys Title Insurance Company; Stewart Title Guaranty Company.