UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05CV-11135-MLW

| | |
|---|---|
| ROBERT D. PRITCHARD, Plaintiff | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| TRAFFICCAST, INC.; BIN RAN; | ) |
| And CONNIE JING LI, Defendants. | ) |
| | ) |

**DEFENDANT PRITCHARD'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
ON JURISDICTIONAL AND VENUE GROUNDS**

Defendant Robert D. Pritchard ("Pritchard") hereby submits this Memorandum of

Law in Opposition to Defendant's Motion to Dismiss on Jurisdictional and Venue

Grounds, pursuant to F.R.C.P. 12(b) and District Court Local Rule 7.1(B)(2).

Accompanying this Opposition Memorandum, Pritchard also submits his supporting

affidavit, with Exhibits A through O, and the supporting affidavit of Bruce Elstein.

I.      **Introduction and Summary of Argument**

The Motion to Dismiss by Defendants TrafficCast, Inc. ("TrafficCast"), Bin Ran

("Ran"), and Connie Jing Li ("Li") (collectively, "the TrafficCast Defendants" or

"defendants") is an exercise in revisionist history.  Defendants' Memorandum, with

support from the Affidavits of TrafficCast's President and Founder Bin Ran ("Ran") and

COO and Founder Connie Jing Li ("Li"), now claims that TrafficCast had no

Massachusetts (Boston area) office when Pritchard worked for TrafficCast, and that

TrafficCast did no business, had no clients, and had no investors in MA during that time.

However, as evidenced by the Pritchard Affidavit, the Elstein Affidavit, and by TrafficCast's own documents attached to Pritchard's Affidavit, the TrafficCast Defendants did regular business in MA during this time. Notably, TrafficCast stated repeatedly in its own documents that it had a Boston office. These documents were disseminated both internally and also to third parties (potential clients and investors). For TrafficCast to now contend that MA courts have no personal jurisdiction over it because it was doing no business in MA and had no MA office at that time, is not credible.

This is especially true considering Pritchard's burden of proof on this Motion to Dismiss: The court must accept Pritchard's allegations as true as long as Pritchard has produced credible evidence as to contacts with MA sufficient for personal jurisdiction. By themselves, the TrafficCast documents attached to Pritchard's affidavit demonstrate that the TrafficCast Defendants held themselves out as having a MA office and presence, participated in several meetings and conferences in MA, and purposefully availed themselves of the benefits and protections of MA laws, such that it does not offend traditional notions of fair play and substantial justice for them to be haled into court in MA. TrafficCast cannot revise its own history and business plans now, after the fact.

As to transfer of venue and convenience issues, the primary consideration in the two parallel cases is that Pritchard filed first in MA. The First and Seventh Circuits agree that the party who is first to file should be accorded deference in his choice of forum. Moreover, Pritchard shows below that the discretionary factors such as convenience of the parties and witnesses, do not weigh against retention of this action in this MA court, where it can be consolidated with the later-filed, parallel WI action.

## II.    Brief Factual Background

Pritchard was a full-time employee of TrafficCast from February 2000 until October 2002. Pritchard Affidavit ¶¶2, 31.[1] During his employment at TrafficCast, Pritchard's title was Executive Vice President, and Pritchard was also considered a Founder of the company. Id. ¶¶2, 16, 17; see Elstein Affidavit ¶8. Not only did TrafficCast use these titles with Pritchard, but it also held him out as such to third parties, as evidenced by Exhibits F through I to the Pritchard Affidavit.

Pritchard's employment agreement with TrafficCast provided that he would receive an annual salary of $110,000, as well as 22 percent of TrafficCast stock or 1,848,000 shares of TrafficCast, and that TrafficCast would reimburse him for costs and expenses incurred on TrafficCast business. Pritchard Affidavit ¶¶5, 14, 15. The number of TrafficCast shares issued to Pritchard is memorialized in Exhibit G.[2]

As to TrafficCast's factual allegations, Pritchard does not dispute that TrafficCast is incorporated and headquartered in WI, and that Ran and Li are WI residents. See, e.g., Li Affidavit ¶¶2, 3. Nor does Pritchard dispute that he traveled to WI (along with a dozen or so other states) in pursuit of TrafficCast business. What Pritchard does dispute is that the TrafficCast Defendants did not regularly do business in MA, or have a MA office, during the time Pritchard worked for TrafficCast. TrafficCast did considerable business in MA during this time (see Pritchard Affidavit ¶¶20-22, 26-28), and TrafficCast had a Boston area, MA office during this time (id. ¶¶7-13, 16-17). Pritchard also disputes

---

[1] Ran and Li state that Pritchard's employment was terminated in June 2002 (see, e.g., Li Affidavit ¶7), but Pritchard did not receive notification of this termination until October 2002. Pritchard Affidavit ¶31.

[2] While not directly at issue in the current motion practice, it is Pritchard's deferred salary and 22 percent share of TrafficCast that are primarily at issue in these cases and are the reason that Pritchard filed this lawsuit in May. Pritchard's claims in this MA action would, in effect, become his counterclaims in the parallel WI action if the WI action goes forward instead of the MA action.

that his employment contract with TrafficCast was finalized in WI; in fact, it was

finalized in MA, and is a MA contract. Id. ¶¶6, 15; Elstein Affidavit ¶¶4, 8.

### III. Massachusetts Courts Have Personal Jurisdiction over the TrafficCast Defendants, Under the Massachusetts Long-Arm Statute and Under the Constitutional Due Process Analysis.

#### A. The Standard of Proof at This Motion to Dismiss Stage

Pritchard bears the burden of showing that MA courts have personal jurisdiction

over the TrafficCast Defendants, but at this stage, the facts are construed in the light most

favorable to Pritchard, and are to be taken as true as long as "properly supported" by

"proffers of evidence." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995); Boit v.

Gar-Tec Products, Inc., 967 F.2d 671 675 (1st Cir. 1992); LaVallee v. Parrot-Ice Drink

Prods. Of America, Inc., 193 F.Supp.2d 296, 298 (D.Mass. 2002); Clark v. City of St.

Augustine, Florida, 977 F.Supp. 541, 542 (D.Mass. 1997); Bennett v. Jack Dennis

Whitewater Trips, 925 F.Supp. 889, 892 (D.Mass. 1996). In making its determination

whether Pritchard has shown personal jurisdiction in MA, the Court should not act as a

fact-finder, but rather accept properly supported evidence from Pritchard as true, using a

prima facie standard to determine whether the proffered evidence, if credited, is sufficient

to support findings of fact needed to find personal jurisdiction. Id.

In this case, Pritchard did not anticipate that TrafficCast would challenge personal

jurisdiction in MA, because (as discussed below) the TrafficCast Defendants did

extensive business there and had a MA office for years. However, Pritchard has

submitted affidavits and documentary evidence herewith that are more than sufficient to

make the required prima facie showing. Pritchard's and Elstein's Affidavit confirm that

Pritchard's employment with TrafficCast was full-time from February 2000 until at least

June 2002, and that Pritchard's employment contract was finalized in MA. Further, as discussed below, Pritchard has met his burden to show that TrafficCast was holding itself out as having a Boston office in its own documents. *See* Exhibits G through I.

**B.    Following the Massachusetts Long-Arm Statute, Pritchard Can Show that the TrafficCast Defendants Were Transacting Business in Massachusetts and that the Claims at Issue in the Two Lawsuits Arose Out of that Same Transaction of Business in Massachusetts.**

To show personal jurisdiction here, Pritchard must make a prima facie showing that the MA long-arm statute (ch. 223A §3) is satisfied, and that the due process constitutional requirements are also satisfied. *E.g.*, LaVallee, 193 F.Supp.2d at 299-300, *citing* Nowak v. Tak How Inv., Ltd., 94 F.3d 708, 712 (1st Cir. 1996), *and* Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6, 389 N.E.2d 76 (1979).

Section 3(a) of the MA long-arm statute permits personal jurisdiction "over a person who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business" in MA. *E.g.*, Tatro v. Manor Care, Inc., 416 Mass. 763, 767, 625 N.E.2d 549 (1994). To satisfy this "transacting any business" subsection of the long-arm statute, Pritchard must show that TrafficCast was transacting business in MA and that Pritchard's alleged injuries arose from TrafficCast's transaction of business in MA. Id. The long-arm statute "is to be construed broadly." LaVallee, 193 F.Supp.2d at 300, *citing* Noonan v. Winston Co., 135 F.3d 85, 92 (1st Cir. 1998).

**1.    The TrafficCast Defendants Were Transacting Business in Massachusetts.**

The most significant contact that the TrafficCast Defendants had with MA during the time of Pritchard's employment was TrafficCast's Boston-area office in Foxboro, MA. TrafficCast's affidavits deny that TrafficCast even "knew about" or "authorized"

any such "office in MA." Li Affidavit ¶13; Ran Affidavit ¶17.    However, TrafficCast

did have a Boston area office, from which Pritchard worked, and held out this office in

sales pitches to third parties. Pritchard Affidavit ¶¶7, 10-12; Elstein Affidavit ¶¶4, 8.

Foxboro, MA is a suburb of Boston, and because Boston is well known for its high-tech

startups and for collaboration between top Boston-area universities and high-tech

companies, TrafficCast no doubt wished to associate itself with the Boston area (the

"East Coast Silicon Valley"). See id. ¶8. During Pritchard's employment, TrafficCast

listed its Boston office on its website, id. ¶10, and included its Boston office in

promotional slide shows for potential clients and customers, see id. ¶¶11-12, and Exhibits

B, C, and D. In its application for liability insurance, TrafficCast included its office in

Foxboro, MA. Id. ¶13 and Exhibit E.[3]

In addition to TrafficCast's Boston office, TrafficCast personnel made several

business visits to MA during Pritchard's employment. The first such trip to MA, in April

2000, is the critical one from which both lawsuits stem: This was the meeting in

TrafficCast's Foxboro, MA office at which Pritchard's employment contract was

finalized. Pritchard Affidavit ¶15; see Li Affidavit ¶19. Ran and Li admit to this

meeting, but characterize it as "purely social," to meet Pritchard's family and Attorney

Elstein. Id. Pritchard vigorously disputes this (¶15), and Elstein corroborates Pritchard

(¶8). At this stage, the Court must accept Pritchard's proffered evidence as true.

Another meeting that Li and Ran attended in Boston was the annual meeting of

---

[3] TrafficCast points out in its affidavits that it paid no rent for the Foxboro, MA office; while this is true because the office was out of Pritchard's home, it does not mean that TrafficCast had no office in MA or that TrafficCast did not hold out its Boston-area office to potential investors and clients. In fact, Pritchard's arrangement of such a rent-free MA office is further evidence of his claim for deferred compensation against the TrafficCast Defendants. And TrafficCast in fact paid for computer and office equipment for this Foxboro, MA office. Pritchard Affidavit ¶9 and Exhibit A.

ITS America, a transportation industry trade group, from 4/29 to 5/4/00. Li and Ran

concede that they attended this meeting (Li Affidavit ¶18) but argue that this and other

meetings were not related to Pritchard (Memorandum, p.6). In fact, at this meeting, the

TrafficCast Defendants set up a booth in the Hynes Convention Center in Boston, staffed

by Ran, Li, Pritchard, Jerome Chen, and Bridgett Barrett. Pritchard Affidavit ¶23.

Pritchard and others had prepared marketing materials in advance (see id.), and during

the convention, these TrafficCast personnel held meetings with potential investors,

clients, and vendors, generating the list of business leads at Exhibit K to the Pritchard

Affidavit. Also during this ITS America meeting in Boston in 2000, Ran, Li, Pritchard,

Elstein, and Jerome Chen attended a strategic planning dinner at a Boston restaurant

(Brassiere Jo). Id. ¶24.[4] After the convention, Pritchard and other TrafficCast

representatives engaged in follow-up activity for TrafficCast. Id. ¶25.

The next meeting in MA was in Boston in July 2001. Pritchard Affidavit ¶28;

Ran Affidavit ¶23. This trip included strategic planning meetings for TrafficCast, and

also side trips to meet with TrafficCast consultants. Pritchard Affidavit ¶28. The fact

that it "did not lead to any client relationship" (Ran Affidavit ¶23) does not mean that it

was not connected with TrafficCast or Pritchard.

Another meeting between Pritchard, Ran, and Li in Boston was in June 2002,

when Li and Pritchard did a slide presentation for IBI. Pritchard Affidavit ¶30; Li

Affidavit ¶18. Li attests (¶18) that this meeting "was unrelated to TrafficCast." But it

was related to TrafficCast (Pritchard Affidavit ¶30), as can be shown by the sample slide

at Exhibit N to the Pritchard Affidavit, taken from their presentation to IBI.

---

[4] Ran's Affidavit (¶8) states that he "met Mr. Pritchard while attending various conferences, none of which were in MA." This is incorrect, not only according to Pritchard's Affidavit (¶23), but according to Ran's own Affidavit (¶20), in which he describes the ITS America meeting in Boston.

Ran (¶24) and Li (¶16) state that "no other employee of TrafficCast" has attended any MA meetings in connection with TrafficCast. Here, defendants are being clever: In fact Jerome Chen, Jessica Liu, and Bridgett Barrett did attend such meetings, although they were technically TranSmart employees at the time. Li Affidavit ¶¶24-26.[5] Anyway, in-person visits are not necessary to satisfy the "transacting any business" prong of the MA long-arm statute. Telephone and mail contacts, soliciting business from the forum (here, MA), are sufficient. Tatro, 416 Mass. at 768-69. Among other contacts, Ran called Pritchard, Sunday through Thursday evenings at 9:00 p.m., at Pritchard's home number in MA, to discuss TrafficCast. Pritchard Affidavit ¶19.

As to other transaction of business in MA, Ran and Li contend that TrafficCast has never had any clients in MA, received any revenue from MA, or made any sales in MA. Li Affidavit ¶¶11; 12; Ran Affidavit ¶¶15-16. Again, this is a distortion of the facts. Pritchard conducted extensive business development efforts from the MA office. In May 2000, a company offered to purchase TrafficCast outright for $8M; Pritchard negotiated and arranged for this deal from the MA office. Pritchard Affidavit ¶¶20-21. Pritchard accepted investments from MA residents. Id. ¶22. And Pritchard conducted most of his TrafficCast business from TrafficCast's MA office, including deals with clients and potential clients (see id. ¶26) and contracts for provision of services by TrafficCast (see id. ¶27). TrafficCast hired the Boston firm of Testa, Hurwitz & Thibeault, LLP, in February 2002 in connection with certain TrafficCast contracts that Pritchard had been involved in negotiating. Id. ¶29.

---

[5]  This cleverness is somewhat disingenuous, considering that defendants are using Chen, Liu, and Barrett as WI witnesses in their argument for transfer of venue. That is, these three employees do not "count" as far as contacts with MA (in their Boston visits for TrafficCast), but they do "count" as far as being potential WI witnesses.

### 2.    Pritchard's Injuries Arise Out of TrafficCast's Transaction of Business in Massachusetts.

The second requirement for the MA long-arm statute is that Pritchard's claims or alleged injuries arose from the transaction of business in MA by the TrafficCast Defendants. Tatro, 416 Mass. at 767. This "arising from" prong is tested by a "but for" test. Id. at 770-71; accord, Clark, 977 F.Supp. at 543. That is, "but for" TrafficCast's transaction of business in MA, Pritchard would not have suffered the injuries that he alleges (including breach of contract, breach of fiduciary duty, and breach of his employment contract).

First, defendants' assertion that Pritchard initiated the contact that led to his employment by TrafficCast (Ran Affidavit ¶9; see Li Affidavit ¶¶4-5) is incorrect. Pritchard did not initially approach Ran or Li in WI; rather, Li approached Pritchard about becoming involved in TrafficCast, when Li took Pritchard to lunch in Washington, DC, to discuss the project. Pritchard Affidavit ¶¶3-4.

Second, the Pritchard employment contract with TrafficCast that is at the center of both lawsuits, was both formed/finalized and also terminated in MA. The contract was finalized at the April 2000 meeting in Foxboro, MA. Id. ¶15; Elstein Affidavit ¶8. Pritchard's employment with TrafficCast was terminated by Ran's October 2002 email to Pritchard in MA. Pritchard Affidavit ¶31 and Exhibit O. For the foregoing reasons, Pritchard has satisfied the requirements of the MA long-arm statute.

### C.    Pritchard Can Meet the Constitutional Requirements to Establish Personal Jurisdiction over the TrafficCast Defendants in MA.

Courts analyze three prongs for specific jurisdiction[6]: (1) the claim(s) underlying

---

[6] Pritchard submits that the business contacts with MA by the TrafficCast Defendants would be "continuous and systematic" enough to justify general personal jurisdiction over the TrafficCast

the litigation must directly arise out of, or relate to, the defendant's forum-state activities [the "relatedness" prong]; (2) the defendant must have purposefully availed itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws [the "purposeful availment" prong]; and (3) the Gestalt factors, which focus on convenience and reasonableness. *See, e.g.,* Sawtelle, 70 F.3d at 1388; Anderson v. Century Products Co., 943 F.Supp. 137 (D.N.H. 1996).

1.    **Pritchard Can Easily Satisfy the Causal Nexus Required for the Relatedness Prong.**

The relatedness prong requires a causal nexus between the defendant's in-forum activities and the plaintiff's claims or injuries. Id. The First Circuit assesses this causation requirement with a test that falls between "but for" causation and proximate causation. Anderson, 943 F.Supp. at 142-43, *citing* Sawtelle, 70 F.3d at 1381, *and* Nowak, 94 F.3d at 712-16. In the instant case, Pritchard has proffered sufficient evidence that his employment contract with TrafficCast was a MA contract (*see* Pritchard Affidavit ¶15; Elstein Affidavit ¶8), and has shown that TrafficCast had a MA office at the time (Pritchard Affidavit ¶¶7-13, 16-17; Elstein Affidavit ¶8). Pritchard has further shown that the work he did for TrafficCast while employed there, was done primarily from MA (Pritchard Affidavit ¶¶20-22, 26-28). Pritchard's claims include that the TrafficCast Defendants breached contract(s) with him, breached their fiduciary duties owed to him, and committed common-law fraud and securities law violations. These claims stem from Pritchard's MA employment contract with TrafficCast. Similarly, TrafficCast's claims

---

Defendants in MA. *See, e.g.,* Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Bennett, 925 F.Supp. at 895. However, general jurisdiction usually applies to situations where the claims do not arise directly out of the defendant's contacts with the forum state. In these two parallel cases, Pritchard's claims and/or alleged injuries do arise directly from the TrafficCast Defendants' contacts with MA (and with Pritchard in MA). Therefore, Pritchard will analyze the constitutional requirements for specific jurisdiction.

against Pritchard in the later-filed WI action stem from this same employment relationship with Pritchard. For example, if Pritchard did breach any contract or duty owed to TrafficCast, such a breach occurred in MA, where Pritchard worked and negotiated deals with (potential) clients and investors.

**2.     The TrafficCast Defendants Purposefully Availed Themselves of the Benefits and Protections of Massachusetts Law.**

As discussed, TrafficCast had a MA office when Pritchard worked for TrafficCast, and the TrafficCast Defendants voluntarily and for their own benefit, told potential clients and potential investors that it had a Boston area office. Pritchard Affidavit ¶¶8-13, 16-17. It is entirely foreseeable that the TrafficCast Defendants could be haled into MA court after they took advantage of this MA presence. The Business Plans and Reports to Investors were circulated to potential investors and to actual investors, as inducements to invest. Id. ¶18. TrafficCast projected its Boston area office on its website at the time. See, e.g., Abiomed, Inc. v. Turnbull, 2005 WL 1693839, *3-4 (D.Mass. 2005) (defendant's occasional business travel to MA, supervision of MA employees, frequent telephone contact with MA residents, and Internet postings directed to MA residents, were sufficient for the "purposeful availment" prong).

Further, Ran's and Li's business trips to MA for conventions and meetings (see above) were intentionally directed towards making business contacts in MA, and took advantage of TrafficCast's MA office. See Pritchard Affidavit ¶¶11-12, 30. Ran's and Li's claims that their visits to Boston during this period were either "purely social" (Li Affidavit ¶¶18-19; see Opposition p.7) or not related to TrafficCast business, are specious; these trips were designed to attract investors and clients; for example, attending the annual meeting of ITS America in the Hynes Convention Center in Boston with the

TrafficCast booth (described above) staffed by Ran, Li, Pritchard, Chen, and others, was not just a vacation to Boston to see the Freedom Trail.

The TrafficCast Defendants claim that they have never had any clients in MA, received any revenue or made any sales in MA (Li Affidavit ¶¶11-12; Ran Affidavit ¶15). Again, they are apparently making technical distinctions, separating actual clients from potential clients. The TrafficCast Defendants were clearly interested in potential clients in MA (*see* Pritchard Affidavit ¶23). And Pritchard signed many contracts and did obtain TrafficCast clients in and from MA, even if those companies were not actually headquartered in MA (they were not headquartered in WI either). Id. ¶¶26-27. Part of the confusion here may be TrafficCast's reliance on the trial court's decision in Daynard v. Nes, Motley, Loadholt, Richardson & Poole, P.A., 184 F.Supp.2d 55, 64 (D.Mass. 2001), at Opposition p.11, relying on dicta that the solicitation of business in MA must be both purposeful *and successful*, to be sufficient for the "purposeful availment" prong. However, the First Circuit reversed this decision, at 290 F.3d 42 (1st Cir.), *cert. denied*, Scruggs v. Daynard, 537 U.S. 1029, 123 S.Ct. 558, 154 L.Ed.2d 444 (2002). Nothing in the First Circuit decision repeats this requirement of *success* (*see* 290 F.3d at 61-62), and such a requirement would be contrary to the focus of the due process analysis, on the voluntariness and foreseeability of the defendants' in-forum activity. Thus, the fact that the TrafficCast Defendants intentionally went into MA to obtain business and flaunted TrafficCast's presence in MA (Pritchard Affidavit ¶¶8-13, 16-17) should be sufficient for purposeful availment. Moreover, TrafficCast did in fact have MA investors, id. ¶22, such that even defendants' "potential versus actual" distinction is immaterial in this context, because Pritchard *was* successful. *See* Tatro, 416 Mass. at 773.

3.      **The Gestalt Factors Favor Pritchard's Position.**

This Court previously listed the following five Gestalt factors:

(1) "the defendant's burden of appearing in the forum state;"
(2) "the forum state's interest in adjudicating the dispute;"
(3) "the plaintiff's interest in obtaining convenient and effective relief;"
(4) "the judicial system's interest in obtaining the most effective resolution of the controversy;" and
(5) "the common interests of all sovereigns in promoting substantive social policies."

Clark, 977 F.Supp. at 543-44, *citing* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477,

105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The "first to file" rule impacts each of these

factors. "A plaintiff's choice of forum must be accorded deference." Id. at 544, *citing*

Sawtelle, 70 F.3d at 1395; *accord*, Rutlin v. United States, 849 F.Supp. 34, 35 (E.D. Wis.

1994), *citing* United States v. Costello, 809 F.Supp. 56, 57 (E.D. Wis. 1992). Here,

Pritchard filed in May 2005 in MA, and TrafficCast filed in August 2005 in WI. Even

putting aside considerations of convenience (discussed below), Pritchard is entitled to his

choice of forum here as the first to file, and this MA court is entitled to determine its own

personal jurisdiction. The respective sovereigns are interested in following the "first to

file" rule, in preventing inconsistent rulings, in permitting MA to decide its own

jurisdictional issues, and in permitting consolidation of these two parallel actions (arising

from the same transactions and occurrences) in the first of the two forums.

4.      **Choice of Law**

Defendants contend that because the second-filed case was brought in WI, WI law

will apply; they further contends that because TrafficCast is a WI corporation, WI law

will govern internal corporate matters, the law of corporate contracts, and breaches of

fiduciary duty. Opposition, pp. 12-13. Defendants' cites for this proposition are not

exactly on point. Defendants cite (p.13) to <u>Micro Networks Corp. v. HIG Hightec, Inc.</u>,

195 F.Supp.2d 255 n.1 (D.Mass. 2001), for the general principles that "matters of

corporate governance are generally decided by the laws of the corporation's home state,"

and that "internal corporate affairs are governed by the law of the state of incorporation."

But "internal corporate affairs" are very different from claims for breach of contract, tort

claims (such as for fraud), or employment law claims.

    In a diversity case, a federal court will look to the forum state's choice of law

rules. <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 Mass. 487, 61 St.Ct. 1020, 85 L.Ed.

1477 (1941). Where transfer of venue under §1404 is at issue, the transferee court (here,

potentially WI) must apply the choice of law rules of the transferor court (here,

potentially MA). <u>In re New England Mutual Life Ins. Co. Sales Practices Litigation</u>, 236

F.Supp.2d 69 (D.Mass. 2002). Thus, MA choice of law rules apply here. <u>Id.</u>

    If Pritchard's employment contract with TrafficCast was a MA contract, as

Pritchard asserts, it will be governed by MA contract law. *See, e.g.,* <u>Choate, Hall &</u>

<u>Stewart v. SCA Services, Inc.</u>, 378 Mass. 535, 541-42, 392 N.E.2d 1045 (1979) (contract

executed in MA, and negotiations of settlement were in MA, so governed by MA law).[7]

Here, the "place of contracting" is disputed, with TrafficCast stating that the subject

contract with Pritchard was formed in WI, and Pritchard stating that it was formed in

MA. As discussed, Pritchard need only make a prima facie showing at this stage of the

litigation, and proffer sufficient evidence to support such a prima facie showing.

Pritchard has certainly met this burden, by his own affidavit (¶15) and the corroborating

---

[7] This is consistent with WI's adoption of §332 of the Restatement of the Conflict of Laws, *see* <u>Goldsmith</u>
<u>v. Walker Mfg. Co., Inc.</u>, 295 F.Supp. 1037, 1040 (E.D. Wis. 1969), which uses "the place of contracting"
to determine "the validity and effect of a promise with respect to (a) capacity to make the contract;... (e)
fraud, illegality, or any other circumstances which make a promise void or voidable...."

affidavit of Bruce Elstein (¶8).

At least one of Pritchard's claims herein is specific to MA law: Pritchard's wrongful termination claim based on the <u>Fortune</u> case and its progeny, which protect an employee from being terminated so that his employer can avoid paying him compensation that is already due to that employee. *See* <u>Fortune v. National Cash Register Co.</u>, 373 Mass. 96, 104-05, 364 N.E.2d 1251 (1977); *accord*, <u>Joyal v. Hasbro, Inc.</u>, 380 F.3d 14, 20 (1st Cir. 2004), *cert. denied*, 125 S.Ct. 1325, 161 L.Ed.2d 113 (2005). In sum, MA substantive law should apply to the state-law claims herein.

### D. The Analysis for Personal Jurisdiction Over the Two Individual Defendants Is Similar, If Overlapping.

Defendants contend that even if there is personal jurisdiction in MA over TrafficCast, there would not be personal jurisdiction over the individual defendants in the MA case (Ran and Li). They cite to <u>Debreceni v. Bru-Jell Leasing Corp.</u>, 710 F.Supp. 15, 20 (D.Mass. 1989) (no personal jurisdiction over individual executive whose connections with MA were not related to the matter).

First, the actions of a corporate agent can be attributed to the principal for purposes of personal jurisdiction. <u>Daynard</u>, 290 F.3d at 55. And even where the agent was not initially authorized to act for the principal, the agent's actions may be attributed to the principal for purposes of personal jurisdiction if the principal later ratifies the agent's conduct. <u>Id.</u>, *citing* <u>Myers v. Bennett Law Offices</u>, 238 F.3d 1068, 1073 (9th Cir. 2001). Thus, any actions by Ran and Li in MA could be characterized as actions for TrafficCast that would confer personal jurisdiction over TrafficCast.

Second, the actions by Ran and Li in Massachusetts were also conducted for their own benefit. Their individual contacts with MA would be sufficient for personal

jurisdiction over them as individuals. *See* Pritchard Affidavit ¶¶10-17, 19, 23-24, 28, 30. This point distinguishes the instant case from <u>Debreceni</u>, 710 F.Supp. at 20, where the contacts with the forum state by the individual bore "no relation to Plaintiff's fraudulent conveyance claim." In the instant case, Ran and Li benefited from multiple business contacts in MA as TrafficCast shareholders, and from TrafficCast's Boston-area presence. Ran and Li made several trips to Massachusetts during Pritchard's employment, including the trip during which they contracted with Pritchard. Pritchard Affidavit ¶¶15, 23-24, 28, 30. Ran supervised Pritchard's MA activities, and called Pritchard in MA regularly, Sunday through Thursday evenings. <u>Id</u>. ¶19.

## IV.    Venue in Massachusetts Would Be Proper.

Defendants contend in the alternative, that venue is improper in MA. In order for venue to be proper, MA must have personal jurisdiction over the TrafficCast Defendants (see above), and the venue statute must be satisfied. The applicable venue statute is §1391(b)(2), for an action not based solely on diversity. This statute merely requires that "a substantial part of the events or omissions giving rise to the claim occurred" in MA. Given the facts discussed above concerning Pritchard's MA employment contract with TrafficCast, TrafficCast's MA office, and the business that the TrafficCast Defendants transacted in MA, Pritchard meets this threshold requirement in MA.

## V.    Further, Venue Should Not Be Transferred Under §1404, Because Pritchard Filed in Massachusetts First, and Because the Balance of the Convenience and "Interests of Justice" Factors Favors Pritchard.

### A.    The "First to File" Rule Should Be Applied Here.

Both the First and Seventh Circuits favor the first-filed venue: "plaintiff's choice of forum is entitled to great deference, and its choice should not be set aside lightly," as

long as not motivated "by any improper purpose such as a desire to vex, harass, or oppress defendant." Milwaukee Electric Tool Corp. v. Black & Decker, Inc., 2005 WL 2403887, *2 (W.D. Wis. 2005), citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000) (strong presumption for plaintiff's choice of forum); Rutlin, 849 F.Supp. at 35.

The TrafficCast Defendants ask this Court to ignore the "first to file" rule here. They cite Wellons v. Numerica Savings Bank, FSB, 749 F.Supp. 336 (D.Mass. 1990), and Josephson v. McGuire, 121 F.Supp. 83 (D.Mass. 1954). The determinative factors in these two cases, discussed in TrafficCast's Memorandum, at pp. 19-20, are not present in the instant case. As just discussed, MA substantive law applies to the common-law claims herein.[8] MA is the state in which Pritchard's claims arose and the state in which his contract with defendants was formed. See Pritchard Affidavit ¶15; Elstein Affidavit ¶8. Further, unlike the facts described from the McGuire case,[9] the key witnesses herein are split between MA and WI (see below).

## B.    The Factors to Be Considered for a Proposed Transfer of Venue

A transfer under §1404(a) is up to the "broad discretion of the district court." L.B. Sales Corp. v. Dial Mfg., Inc., 593 F.Supp. 290, 295 (E.D. Wis. 1984). And the parties seeking transfer must show that the plaintiff's choice of forum is "substantially

---

[8] In Wellons, 749 F. Supp. at 337, the court considered a case involving New Hampshire land, and a loan contract with an express choice-of-law provision specifying NH substantive law; these factors weighed in favor of transfer of venue to NH. The instant case does not involve any such choice-of-law clause.

[9] The McGuire case, 121 F.Supp. at 84-85, was a minority shareholder derivative suit, where defendant's complained-of conduct (contracts and votes) all occurred in New Mexico, which was also the state of incorporation. Because none of the conduct at issue occurred in MA, the MA court transferred venue. Id. at 85. However a Texas federal court called into doubt one aspect of the Josephson v. McGuire opinion, in Mohamed v. Mazda Motor Corp., 90 F.Supp.2d 757 (E.D. Tex. 2000). The Texas court felt that the Massachusetts court did not accord the Plaintiff's choice of forum enough weight in its venue transfer analysis, even though the events at issue occurred elsewhere and the shareholders were scattered throughout the country. Id. at 774.

more inconvenient than the alternative" forum. <u>Anderson</u>, 943 F.Supp. at 148; *accord,*

<u>Milwaukee Electric</u>, 2005 WL 2403887, *1 (using "clearly more convenient" standard).

Analyzing the factors discussed below, defendants do not meet this standard.

The First Circuit has expanded on the statutory description of the factors to be

considered with a transfer of venue "for the convenience of parties and witnesses, in the

interest of justice" (28 U.S.C. §1404(a)), as follows:

> In addition to the convenience of parties and witnesses, the factors to be
> considered by the court include the availability of documents; the possibility of
> consolidation; and the order in which the district court obtained jurisdiction…
> "Where identical actions are proceeding concurrently in two federal courts…the
> first-filed action is generally preferred in a choice-of-venue decision."… The
> burden of proof rests with the party seeking transfer; there is a strong presumption
> in favor of the Plaintiffs' choice of forum.

<u>Coady</u>, 223 F.3d at 11, *quoting* <u>Cianbro Corp. v. Curran-Levoie, Inc.</u> 814 F.2d 7, 11 (1st

Cir. 1987).

**C.    The Convenience Factors Favor Pritchard.**

The convenience of the parties factor is essentially a wash. The physical location

of TrafficCast's corporate records in WI (Li Affidavit ¶21) is immaterial, as such records

can easily be copied and shipped to opposing counsel anywhere. *See* <u>Milwaukee</u>

<u>Electric</u>, 2005 WL 2403887, *2 ("evidence can be transported," and location of

documentary evidence not as much an issue in modern technological society).

The convenience of witnesses factor is also less important, as the out-of-state

party can "obtain the testimony of these witnesses through depositions." <u>Id</u>. Further,

TrafficCast's list of five WI witnesses and one MA witness is misleading. This factor

should not degenerate into "a battle of numbers favoring the party that can provide the

longest list of witnesses it plans to call" in its chosen forum; rather the focus should be

00074978.DOC

"on the key witnesses." <u>Anderson</u>, 943 F.Supp. at 149, *citing* <u>LaCroix v. American Horse Show Assoc.</u>, 853 F.Supp. 992, 1001 (N.D. Ohio 1994). As to Pritchard's employment relationship with TrafficCast (the subject of the two lawsuits), there are four key witnesses: Bin Ran, Connie Li, Bob Pritchard, and Bruce Elstein. These four individuals were present at the April 2000 meeting in MA at which Pritchard's employment contract with TrafficCast was finalized.[10] It is this employment contract that is at the heart of the parallel lawsuits, first filed in Massachusetts, then in Wisconsin. Of these key witnesses, Elstein is a Connecticut resident, but will probably appear for deposition in Massachusetts, so there are two Wisconsin witnesses and two Massachusetts witnesses.

**C.    The Comparative Financial Strengths of the Parties Favors Pritchard.**

Some cases identify "the comparative financial strength of the parties" as another factor in the choice of venue analysis. *See, e.g.,* <u>Anderson</u>, 943 F.Supp. at 148; <u>Tatro</u>, 416 Mass. at 773. When comparing corporate defendants with deeper resources, to an individual plaintiff, courts have recognized that the corporate parties are better able to shift the financial burden of litigating in another state (for example, to clients) than is the individual plaintiff, who could find such costs prohibitive. <u>Id.</u>

**D.    The "Interest of Justice" Factors**

The parties have equal access to documentary evidence, because documents can be reproduced anywhere. As discussed, the key witnesses are in both MA and WI. As far as compulsory process, the only key witness who is not a *party* is Bruce Elstein, who

---

[10] The agreements between TrafficCast and Pritchard were finalized, in the Massachusetts meeting in April of 2000. Pritchard Affidavit ¶15; Elstein Affidavit ¶8. Even the TrafficCast Defendants admit that this meeting took place (although they characterize it very differently). Li Affidavit ¶19. This is the critical meeting in which there were only four participants/witnesses.

resides closer to Massachusetts than to Wisconsin.

Both the First and Seventh Circuits have recognized the possibility of consolidation as a factor in the analysis of venue transfer. *See* Coady, 223 F.3d at 11 (1st Cir. 2000); Coffey v. Van Dorn Ironworks, 796 F.2d 217, 221 (7th Cir. 1986). Here, Pritchard intends to seek consolidation of the two actions in MA federal court if the WI case is transferred here. The interest of justice would be served by litigating these issues in *one* forum and by avoiding possibly inconsistent judgments. "The resolution of a case in a single forum will prompt judicial economy." LaVallee, 193 F.Supp.2d at 305. Thus, the venue transfer factors favor this MA court.

## VI.    Conclusion

For the foregoing reasons, Pritchard respectfully asks this Court to deny TrafficCast's Motion to Dismiss and/or to Transfer Venue to Wisconsin under §1404(a). Massachusetts has personal jurisdiction over the TrafficCast Defendants, venue is proper in MA, and MA is the better forum, especially considering the relative financial strengths of the parties and the fact that Pritchard filed the MA action first.

DEFENDANT ROBERT D. PRITCHARD,
By His Attorneys,

Dated: October 28, 2005

*John Barker*

Paul Michienzie, Esq.
John C. Barker, Esq.
Michienzie & Sawin LLC
745 Boylston Street, 5th Floor
Boston, MA 02116
Tel: 617-227-5660

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05CV-11135-MLW

|  |  |
|---|---|
| ROBERT D. PRITCHARD, Plaintiff | ) ) ) |
| v. | ) ) |
| TRAFFICCAST, INC.; BIN RAN; And CONNIE JING LI, Defendants. | ) ) ) ) |

**PLAINTIFF PRITCHARD'S CERTIFICATE OF SERVICE OF OPPOSITION PAPERS TO DEFENDANT'S MOTION TO DISMISS**

I, John C. Barker, attorney for plaintiff hereby certify that I have on this 28th day of October 2005, served copies of (1) Plaintiff Pritchard's Memorandum of Law in Opposition to Defendant's Motion to Dismiss on Jurisdictional and Venue Grounds; (2) Supporting Affidavit of Robert Pritchard, with Exhibits A through O; (3) Supporting Affidavit of Bruce Elstein; and (4) Certificate of Service, by mailing a copy of same, via first class mail, to Brian A. Gillis, Esq., Law Offices, 45 School Street, Boston, MA 02108 and Darice Hermann, Esq., Blommer Peterman, 13700 West Greenfield Avenue, Brookfield, WI 53002.

PLAINTIFF ROBERT D. PRITCHARD,
By His Attorneys

_John Barker_

Paul Michienzie, Esq.
John C. Barker, Esq.
Michienzie & Sawin LLC
745 Boylston Street, 5th Floor
Boston, MA 02116
Tel: 617-227-5660

{00075002.DOC}