UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05CV-11135-MLW

ROBERT D. PRITCHARD, )
    Plaintiff, )
)
v. )
)
TRAFFICCAST, INC.; BIN )
RAN; AND CONNIE JING LI, )
    Defendants. )

## AFFIDAVIT OF PLAINTIFF ROBERT D. PRITCHARD

I, Robert D. Pritchard, hereby depose under oath and swear as follows:

1. I am the plaintiff in this case. I have personal knowledge of the facts set forth herein, and if called and sworn to testify, could competently testify thereto.

2. From February 2000, until at least June 2002, I was a full-time employee of defendant TrafficCast, Inc. ("TrafficCast"). My title with TrafficCast was Executive Vice President, and I was also considered a Founder of the company and referred to as such in company documents held out to potential investors and clients, as detailed below.

**The Start of My Relationship with TrafficCast**

3. Before becoming a full-time employee of TrafficCast, I began my involvement with TrafficCast in 1999. My first contact with anyone from TrafficCast concerning TrafficCast, was when Founder (and defendant) Connie Jing Li ("Li") approached me in early 1999 to see if I would be interested in participating in the TrafficCast venture. At that time, she bought me lunch in Washington, DC, in order to

discuss the project. In July 1999 she followed up and requested assistance with a TrafficCast project. I did not make the initial contact with defendants; rather Li first contacted *me* about TrafficCast.

4. Li also asked me to send her my resume. I did so in August 1999, along with sample research and promotional materials

5. Starting in November 1999, I travelled on behalf of TrafficCast at their request. They agreed to pay all my travel expenses incurred in connection with TrafficCast business, and they did reimburse my travel expenses for these early trips for TrafficCast. The preparation work for these early trips was done in Massachusetts. My involvement was based on assurances by Li and Ran that I was acting as a founding partner and employee, and that such agreements were forthcoming.

6. From February 2000 until October 2002 (or at least until June 2002), I was employed full-time for TrafficCast.

**TrafficCast's Boston-Area Office**

7. From February 2000 until October 2002 (or at least until June 2002), when I was employed full-time by TrafficCast, I worked primarily out of TrafficCast's office in Foxboro, Massachusetts.

8. Foxboro, Massachusetts, is a suburb of Boston, MA. References in TrafficCast business plans, publications, and other documents to the "Boston Office" are to the office in Foxboro, MA. The greater Boston area is well-known for high-tech startups, and TrafficCast could benefit from having a branch office in the Boston area.

9. Starting in February 2000, TrafficCast provided me with three computers and related equipment, office furniture, and telephone equipment, all for TrafficCast's

Foxboro, MA office. Attached hereto at Exhibit A, are true and accurate copies of my expense reports for furniture and telephone equipment, for which TrafficCast reimbursed me.

10. From at least August 2000 until October 2002, TrafficCast's Boston office was referenced on the TrafficCast website.

11. In 2000 and 2001, various promotional presentations and slide shows refer to TrafficCast's Boston office. Examples include a TrafficCast presentation for InfoMove, approved by defendant Bin Ran ("Ran") and dated 10/20/00, and a reference to the Boston office in a 3/5/01 presentation for BMW. Attached hereto at Exhibit B, is a true and accurate copy of selected slides from the InfoMove presentations and Ran's email approving this presentation. Attached hereto at Exhibit C, is a true and accurate copy of selected slides from the BMW presentation and a related email exchange.

12. In December 2000 defendant Ran prepared an "Operational Overview and Strategic Planning" presentation that included reference to TrafficCast's Boston office. Attached hereto at Exhibit D are true and accurate copies of selected slides from this December 2000 presentation.

13. In January of 2002, I emailed defendant Li about TrafficCast's obtaining officer liability insurance. A true and accurate copy of an email exchange between me and Li is attached hereto at Exhibit E. When Li completed the application for professional liability insurance, to Philadelphia Insurance Companies, the application listed TrafficCast's Foxboro, Massachusetts office as a branch office of TrafficCast. A true and accurate copy of TrafficCast's application for professional liability insurance, to Philadelphia Insurance Companies, is attached hereto at Exhibit E.

### My Position with TrafficCast, and My Share of TrafficCast

14. In March and April of 2000, I negotiated my share of TrafficCast stock over the phone with defendant Ran. We ultimately reached agreement that my share would be 22 percent of TrafficCast. Attached hereto at Exhibit F, is a true and accurate copy of a memorandum from Ran during the negotiations, showing his initial offer of 11 percent. Attached at Exhibit G, is a true and accurate copy of an 8/20/00 email from Ran to me in Massachusetts, with attachments including the "Stock Commitment for Founders and Developers," which indicates that the number of shares assigned to me is 1,848,000.

15. In April 2000, I met with defendants Ran and Li at TrafficCast's Foxboro, Massachusetts office, and finalized my employment agreement with TrafficCast. Attorney Bruce Elstein was also present at this April 2000 meeting.

16. In July 2000, TrafficCast's Business Plan was completed, and true and accurate copies of portions of this plan are attached hereto at Exhibit H. The July 2000 TrafficCast business plan refers to me as the TrafficCast Executive Vice President and as a TrafficCast Founder, and lists TrafficCast's Boston office. *See* Exhibit H. This business plan at Exhibit H was created by defendant Ran. When Ran updated the TrafficCast business plan, he included the same references to me as the TrafficCast Executive Vice President and as a TrafficCast Founder.

17. Attached hereto at Exhibit I is a true and accurate copy of TrafficCast's Report to Investors for the fourth quarter of 2000. In this Report to Investors at Exhibit I, TrafficCast refers to "senior TrafficCast staff members" as "including Bob Pritchard… from [the] Boston office…." This Report to Investors was drafted and disseminated by defendant Ran.

18.     The July 2000 and subsequent TrafficCast Business Plans were circulated, to third parties outside of TrafficCast. Among others, the TrafficCast Business Plan was circulated to investors John Ricker, Mary Ricker, and Terry Daly, as well as to potential corporate investors. This was also true of the TrafficCast Report to Investors for the fourth quarter of 2000 (see preceding paragraph), which was circulated to potential investors outside of TrafficCast.

**TrafficCast's Massachusetts Connections; Doing Business in Massachusetts**

19.     During most of the time of my employment with TrafficCast (from February 2000 until at least June 2002), I had scheduled phone conversations with Founder and President of TrafficCast, defendant Ran, Sunday through Thursday evenings at 9:00 p.m. Ran called me at my home number in Massachusetts (508-543-8978) Sunday through Thursday evenings.

20.     I conducted extensive business development efforts by phone and email from TrafficCast's Foxboro, MA office.

21.     In May 2000, InfoMove offered to purchase TrafficCast outright for $8M ($2M in cash, and $6M in InfoMove stock). I conducted all negotiations concerning InfoMove's offer over the phone from TrafficCast's Foxboro, MA office. Although Ran eventually turned down this offer, the amount became the basis for the valuation of TrafficCast detailed in subsequent business plans, starting with the July 2000 business plan.

22.     In September 2000, I accepted $10,000 from John Ricker of Foxboro, MA, and $1,500 from Mary Ricker of Stoughton, MA, for investment in TrafficCast.

Another individual investor, Terry Daly of New York, also sent me a $10,000 check, which he sent to me at the TrafficCast, MA office, for investment in TrafficCast.

23.     TrafficCast representatives attended the annual meeting of ITS America, a transportation industry trade group, in Boston from 4/29/00 to 5/4/00. In attendance were defendants Ran and Li, myself, as well as TrafficCast representatives Jerome Chen and Bridgett Barrett. TrafficCast engaged in extensive business development activities at this ITS meeting, and rented a booth in the Hynes Convention Center in Boston, staffed by the five just-listed persons. In advance of this meeting, I and others prepared marketing materials, and attached hereto at Exhibit J, is a true and accurate copy of my expense report for promotional materials. We held numerous meetings with potential investors, clients, and vendors during this time and made other contacts for TrafficCast. Attached hereto at Exhibit K is a true and accurate copy of a list of about 50 business leads collected by the TrafficCast team at the ITS annual meeting in 2000 in Boston; Ran approved and circulated this list at Exhibit K.

24.     During the ITS America annual meeting in Boston in 2000, I and other senior TrafficCast management attended a dinner at Brassiere Jo in Boston to discuss TrafficCast strategic planning. Attending this dinner at Brassiere Jo in Boston were Ran, Li, myself, Bruce Elstein, and Jerome Chen.

25.     After TrafficCast attended the ITS America annual meeting in Boston in 2000 (see previous paragraphs), we engaged in extensive follow-up activities in Massachusetts. Attached hereto at Exhibit L is a true and accurate copy of an email sent to Nhai Cao referencing Cao's TrafficCast business contact in Massachusetts with Jerome Chen at the convention in Boston. Attached hereto at Exhibit L is an email from

me to J.J. Adams concerning his TrafficCast business contact in Massachusetts with defendant Li. Attached hereto at Exhibit L is a true and accurate copy of an email to defendant Ran and me describing TrafficCast's (Bridgett Barrett's) follow-up research after the convention in Boston in 2000.

26. Between August 2000 and June 2002, I signed numerous non-disclosure agreements on behalf of TrafficCast, from its Foxboro, MA office. For example, on 8/3/00, I signed a non-disclosure agreement with AvantGo, which agreement was faxed to me at the MA office. On 10/2/00, I signed a non-disclosure agreement with ATX, which agreement was faxed me to at TrafficCast's MA office. On 1/26/01, I signed a non-disclosure agreement with AAA Response, which agreement was faxed to me at TrafficCast's MA office. On 3/06/01, I signed a non-disclosure agreement with Alpine Electronics of America, which agreement was faxed to me at TrafficCast's MA office. On 6/14/01, I signed a non-disclosure agreement with Unwired Express, which agreement was faxed to me at TrafficCast's MA office. On 10/19/01, I signed a non-disclosure agreement with ESRI, which agreement was faxed to me at TrafficCast's MA office. On 3/29/01, I signed an Agreement for Unsolicited Ideas with UPS, which agreement was signed and witnessed at TrafficCast's MA office.

27. From November 2000 to June 2002, I signed numerous contracts on behalf of TrafficCast, as its Executive Vice President, in its MA office, for data purchase or provision of services. For example, on 11/10/00 I executed Demonstration and Development License Agreements with Navigation Technologies; these were faxed from the Foxboro, MA office. On 10/30/00, I executed a data-reseller agreement with GDT (from Lebanon, NH) and faxed it from the Foxboro, MA office; a follow-up hard-copy

was sent via overnight courier by GDT to the Foxboro, MA office on 11/13/01. On 12/22/00, I executed and then faxed data purchase agreements with TeleAtlas (of Menlo Park, CA) on behalf of TrafficCast from its Foxboro, MA office. During December 2000, I negotiated agreements with i3Mobile (of Stamford, CT) on behalf of TrafficCast from its Foxboro, MA office, copies of which were faxed to TrafficCast Massachusetts office for my approval, before defendant Li signed the contract with i3Mobile. On 12/26/00, I executed a service agreement with @Road; this agreement was sent from the Foxboro, MA office. In April 2001, I negotiated and prepared an agreement with Gannett Fleming from MA, copies of which were faxed to TrafficCast's MA office for my approval, before Li signed the contract with Gannett Fleming. In June 2001, I executed and faxed a license agreement for NavTech Traffic Codes, on behalf of TrafficCast from its Foxboro, MA office. On 9/18/01, I executed and faxed an agreement with Webraska (of Montreal, Quebec, Canada), on behalf of TrafficCast from its Foxboro, MA office. On 3/11/02, I executed and faxed an agreement with Kivera (of Oakland, CA), on behalf of TrafficCast from its Foxboro, MA office.

28.   Defendant Ran traveled to Massachusetts in July 2001, for meetings with me at TrafficCast's MA office, concerning strategic planning for TrafficCast. During that same trip, we also met in CT with Rolf Heitmann, Bruce Elstein, and Milan Turk, to discuss strategic planning as well.

29.   In or about February 2002, TrafficCast hired the Boston law firm of Testa Hurwitz & Thibeault, LLP. Testa attorneys such as Heather Stone worked in Boston for TrafficCast, concerning certain large TrafficCast contracts (including those with TelContar and with WingCast). Attached hereto at Exhibit M are documents concerning

00074795.DOC

TrafficCast's hiring of Testa Hurwitz in 2002, including emails from defendant Li and also a bill from Testa Hurwitz to TrafficCast from the fall of 2002, which bill was sent to TrafficCast's Massachusetts office (sent to me in Foxboro, MA).

30. Attached hereto at Exhibit N, is a true and accurate copy of an email exchange between defendant Li and me, concerning our meeting in June 2002 in Boston, MA. Li indicated that she would be staying at the Copley Square Hotel in Boston, and that we would go together to a slide presentation at IBI. Li and I had lunch at Kingfish Hall in Boston and discussed TrafficCast. Attached hereto at Exhibit N, is a true an accurate copy of a slide from Li's presentation to IBI.

**The End of My Employment with TrafficCast**

31. Attached hereto at Exhibit O is a true and accurate copy of an email from Ran to me in October 2002 stating that "We have chosen to go onto a different route. For the ITS World Congress, we would like to ask you not to represent TrafficCast. We appreciate your understanding." This email exchange concerned a meeting with Ran about NavTech and other potential TrafficCast business (at a conference that was neither in MA nor WI). This was the email that apparently terminated my employment at TrafficCast.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 26 DAY OF OCTOBER 2005.

_____
Robert D. Pritchard