UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05CV-11135-MLW
Consolidated with 05CV-12288-MLW

|  |  |
|---|---|
| ROBERT D. PRITCHARD,<br>Plaintiff,<br><br>v.<br><br>TRAFFICCAST, INC.; BIN RAN; AND CONNIE JING LI,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AMENDED COMPLAINT AND JURY DEMAND

### Introduction

1.  Plaintiff Robert D. Pritchard ("plaintiff"), through his counsel of record, hereby brings this action against corporate Defendant TrafficCast, Inc. ("TrafficCast"), and individual Defendants Bin Ran and Connie Jing Li (collectively, "defendants").

### Jurisdiction and Venue

2.  Because of the Federal Securities Law claim below, subject matter jurisdiction over defendants is appropriate pursuant to 28 U.S.C. §1331. Subject matter jurisdiction over the state-law claims below is properly maintained under 28 U.S.C. §1367(a).

3.  In addition, because complete diversity exists, federal subject matter jurisdiction is proper, in the alternative, under 28 U.S.C. §1332(a)(1). Plaintiff is a resident of Massachusetts, the individual defendants are residents of Wisconsin, and the corporate defendant is headquartered in Wisconsin and incorporated either in Wisconsin or Delaware.

4.  Venue is proper in the Eastern District of the United States of the District Court of Massachusetts, pursuant to 28 U.S.C. §1391(b)(2) if under a federal question jurisdiction; and pursuant to 28 U.S.C. §1391(a)(2) if under diversity jurisdiction.

### The Parties

5.  Plaintiff Robert D. Pritchard was a Director and Executive Vice President of defendant TrafficCast, Inc. from February 2000. Plaintiff is a resident of Foxboro, Massachusetts.

6.  The corporate defendant, TrafficCast, Inc. was formerly known as TrafficCast.Com, Inc. Its principal address is 2802 Coho Street, Suite 102, Maidson, WI 53713. It was (and is) a privately owned startup company holding patents on systems that predict traffic patterns and timing anywhere in the United States. TrafficCast regularly did business in Massachusetts, and had a Boston-area office from 2000 until at least 2002.

7.  Individual defendant Professor Bin Ran, Ph.D, was and is President, CEO, registered agent for service of process, and part-owner of TrafficCast, Inc.

8.  Individual defendant Connie Jing Li, Ph.D and P.E., was and is Chief Operating Officer of part-owner of TrafficCast, Inc.

**Factual Background**

9.  The two individual defendants (Ran and Li) founded the corporate defendant, along with co-founder Jerome Chen, in or about November 1999. Following a period of part-time effort beginning in or about November 1999, plaintiff joined them as a company founder in early 2000. Plaintiff Pritchard is listed as a founder or a "founding partner" in at least three of the company's internal Business Plans: on pages 3 and 38 of the 7/31/00 Business Plan, Pritchard is listed as a founder; on page 3 of the company's 9/01 Business Plan, Pritchard is listed as a founder; and on page 3 of the company's 1/22/02 Business Plan, he is listed as a founding partner. Pritchard was also listed as a "founding partner" in several other documents and correspondence to clients, vendors, and investors. Pritchard was also considered part of TrafficCast's management team: He is listed as part of the management team on pages 38 and 39 of the 7/31/00 Business Plan; Pritchard is one of the key management personnel, and the Executive Vice President, on pages 5 and 38 of the 9/01 plan; and on page 39 of that plan, Pritchard is listed as leading the marketing and sales team for the company. Plaintiff Pritchard was also a Director of the closely held company, as is indicated on pages 35 and 38 of the 9/01 Business Plan, and on the 2000 Corporate Bylaws of TrafficCast.Com, Inc., p.4. These three Business Plans were partly prepared by Ran, approved by Ran, and distributed to all of the founders and directors of TrafficCast at or around the time of their dates. The 3/28/00 Minutes of a Board of Directors meeting list Pritchard as the President and defendant Ran as the Vice President, and indicate that President's annual salary is $120,000 and the Vice President's annual salary is $110,000. Pritchard's and Ran's roles were changed subsequently, with Pritchard being the Vice President, and Ran being the President. Pritchard reasonably relied on all representations made in these Business Plans of TrafficCast, at the time they were made.

10. The founders have contributed their labor, deferred salaries and other compensation, contributions toward company expenses, as well as intellectual property, to the formation of the company. As indicated on page 32 of the 7/31/00 Business Plan, TrafficCast's current development is funded by deferred salaries and by stock options for the development team, which included plaintiff Pritchard. As of the 7/31/00 Business Plan, the company was valued at $8.4M (page 32); but subsequent Business Plans valued the company at about $18M, as indicated at pages 3, 36, 38 of the 9/01 plan and at page 3 of the 1/22/02 plan. It was the

founders, including plaintiff Pritchard, who held 100 percent of the company's value, as indicated at page 38 of the 7/31/00 Business Plan.

11.     In early 2000, probably in or around February 2000, plaintiff spoke with defendant Ran over the phone, and before April 2000, Ran agreed that plaintiff would be entitled to a 22 percent share of TrafficCast, and that plaintiff would be an Executive Vice President of TrafficCast. This oral agreement was finalized in meetings in Massachusetts, in Boston on 4/30/00 and in Foxboro on 5/1/00. Plaintiff's employment agreement with TrafficCast and his agreement that he would be entitled to a 22-percent share of TrafficCast, were finalized at these 4/30/00 and 5/1/00 meetings in the presence of Attorney Bruce Elstein.

12.     Defendants promised plaintiff an annual salary of $110,000. The 3/28/00 Minutes of the TrafficCast Board of Directors, submitted to TrafficCast counsel Bruce Elstein, list the annual salary for the Vice President as $110,000. This figure was approved by the three Directors present at the 3/28/00 meeting, Pritchard, Ran, and Li. This amount is set forth in the Financial Projections document for 2000-2001 for defendant TrafficCast, which document was distributed to the founders (including plaintiff) in 2000. Their agreement concerning the annual salary of $110,000 was finalized between their 4/30/00 and 5/1/00 meetings in Massachusetts, and TrafficCast's 7/31/00 Business Plan. Plaintiff was also promised benefits, which were valued at approximately half of his annual salary, as reflected in the 7/31/00 Business Plan. Plaintiff was paid about $180,000 in salary, and was provided no benefits, between August 2000 and April 2002.

13.     Defendants Ran and Li repeatedly made written and oral representations to plaintiff Pritchard that was a founding partner, director, and Executive Vice President of defendant TrafficCast. Further, they represented orally to plaintiff that he would be entitled to an annual salary of $110,000, reimbursement of travel and other business expenses, and that he was entitled to 1,848,000 shares of TrafficCast.

14.     Between November 1999 and October of 2002 (Pritchard worked part-time from November 1999 to February 2000), the plaintiff worked hard to promote and develop TrafficCast, deferring substantial salary and benefits in the approximate amount of $270,000 (not including any interest).

15.     Plaintiff was a full-time employee of TrafficCast from February 2000 until October of 2002. TrafficCast's own documents refer to him as an employee.

16.     Between August 2000 and June 2002, Pritchard signed numerous non-disclosure agreements on behalf of TrafficCast, from its Foxboro, MA office. For example, on 8/3/00, Pritchard signed a non-disclosure agreement with AvantGo, which agreement was faxed to Pritchard at the MA office. On 10/2/00, Pritchard signed a non-disclosure agreement with ATX, which agreement was faxed to Pritchard at TrafficCast's MA office. On 1/26/01, Pritchard signed a non-disclosure agreement with AAA Response, which agreement was faxed to Pritchard at TrafficCast's MA office. On 3/06/01, Pritchard signed a non-disclosure agreement with Alpine Electronics of America, which agreement was faxed to Pritchard at TrafficCast's MA office. On 6/14/01, Pritchard signed a non-disclosure agreement with Unwired Express, which

agreement was faxed to Pritchard at TrafficCast's MA office. On 10/19/01, Pritchard signed a non-disclosure agreement with ESRI, which agreement was faxed to Pritchard at TrafficCast's MA office. On 3/29/01, Pritchard signed an Agreement for Unsolicited Ideas with UPS, which agreement was signed and witnessed at TrafficCast's MA office. Each of these non-disclosure agreements was signed by Pritchard on behalf of TrafficCast's in Pritchard's capacity as Executive Vice President of TrafficCast.

17. From November 2000 to June 2002, Pritchard signed numerous contracts on behalf of TrafficCast, as its Executive Vice President, in its MA office, for data purchase or provision of services. For example, on 11/10/00 Pritchard executed Demonstration and Development License Agreements with Navigation Technologies; these were faxed from the Foxboro, MA office. On 10/30/00, Pritchard executed a data-reseller agreement with GDT (from Lebanon, NH) and faxed it from the Foxboro, MA office; a followup hard-copy was sent via overnight courier by GDT to the Foxboro, MA office on 11/13/01. On 12/22/00, Pritchard executed and then faxed data purchase agreements with TeleAtlas (of Menlo Park, CA) on behalf of TrafficCast from its Foxboro, MA office. During December 2000, Pritchard negotiated agreements with i3Mobile (of Stamford, CT) on behalf of TrafficCast from its Foxboro, MA office, copies of which were faxed to TrafficCast Massachusetts office for my approval, before defendant Li signed the contract with i3Mobile. On 12/26/00, Pritchard executed a service agreement with @Road; this agreement was sent from the Foxboro, MA office. In April 2001, Pritchard negotiated and prepared an agreement with Gannett Fleming from MA, copies of which were faxed to TrafficCast's MA office for Pritchard's approval, before Li signed the contract with Gannett Fleming. In June 2001, Pritchard executed and faxed a license agreement for NavTech Traffic Codes, on behalf of TrafficCast from its Foxboro, MA office. On 9/18/01, Pritchard executed and faxed an agreement with Webraska (of Montreal, Quebec, Canada), on behalf of TrafficCast from its Foxboro, MA office. On 3/11/02, Pritchard executed and faxed an agreement with Kivera (of Oakland, CA), on behalf of TrafficCast from its Foxboro, MA office. Each of these vendor and client contracts were signed by Pritchard on behalf of TrafficCast's in Pritchard's capacity as Executive Vice President of TrafficCast.

18. The defendants promised plaintiff a 22 percent share of TrafficCast (as first translated into 1,848,000 shares of TrafficCast and described in the Business Plans), in return for his hard work and expertise in developing the business. Business Plans and other documentation from TrafficCast confirm the issuance to plaintiff by TrafficCast of 1,848,000 shares (see above). On or before 5/14/00, defendant Ran emailed a table of Stock Commitments for Founders and Developers, which reflected that 1,848,000 shares of TrafficCast had been committed to founder Robert Pritchard.

19. Plaintiff paid for various company expenses and costs during the development of TrafficCast, out of his own pocket. He has not yet been reimbursed for all of these costs and expenses. Defendants now owe Pritchard unpaid travel and business expenses in the approximate amount of $25,000 (not including any interest).

20. In or about June 2002, defendant Ran began to distance himself and defendant TrafficCast from plaintiff. In October 2002, defendant Ran provided vague explanations such as that they were "going on different routes." Despite plaintiff's repeated written and verbal

requests for an explanation and/or a settling up of money due to plaintiff, defendants never provided either.

21.     On Monday 10/14/02, Pritchard met with Li and Ran at the ITS World Congress meeting in Chicago, IL. After explaining that Pritchard was no longer part of the TrafficCast team, Li told Pritchard that Pritchard at least still had Pritchard's founder's share. Pritchard reasonably relied on these, and other, representations by defendants at the time they were made.

### Count I:  Violations of Federal Securities Laws, Against Defendants

22.    Plaintiff incorporates by reference, as if fully set forth herein, Paragraphs 1 through 21.

23.     Plaintiff was issued 1,848,000 shares of TrafficCast in 2000 in consideration for his efforts and expertise in developing the startup company. This issuance constitutes the purchase or sale of stock.

24.     Defendants misrepresented to plaintiff that he would remain a Director and Executive Vice President of TrafficCast entitled to an annual salary of $110,000, reimbursement of travel and related business expenses, and that he would be entitled to these 1,848,000 shares, with each share at that time having a par value of $1.00. The stock issued to plaintiff was issued in addition to his salary. These misrepresentations, as specified above, were material, and caused plaintiff to waste much of 2.5 years of his life.

25.     The individual defendants Ran and Li intentionally misrepresented these facts, in that they never intended to give plaintiff the salary they promised him, reimburse him for inccured travel and related business expenses, or give him the shares they issued to him in TrafficCast.

26.     Plaintiff reasonably relied on promises from the individual defendants Ran and Li, in working for TrafficCast for more than two years, spending his own money for the company's costs and expenses, accepting deferred salary in substantial amounts, and suffering substantial detriment in return for a substantial gain of over $2M in ultimate profits. TrafficCast has a good product, valuable intellectual property, and hardworking and experienced personnel developing the company; thus, it was reasonable for the plaintiff to believe that the company was (and is) a viable startup, such that he was willing to defer salary and except valuable shares for his work and expertise.

27.     As a result of defendants' intentional misrepresentations to plaintiff, plaintiff has lost over $2M in lost shares, salary, expenses, and costs.

28.     By their intentional misrepresentations and/or omissions detailed above, defendants violated 15 U.S.C. §78j(b) and/or §77q and/or 17 C.F.R. §240.10b-5.

### Count II: Common-Law Fraud, Against Defendants Ran and Li

29. Plaintiff incorporates by reference, as if fully set forth herein, Paragraphs 1 through 28.

30. Defendants Ran and Li misrepresented to plaintiff that he would be paid certain salary amounts, totaling approximately $270,000; that he would be reimbursed for his out-of-pocket expenses incurred on behalf of TrafficCast, totaling approximately $25,000; and that he would have 1,848,000 shares of TrafficCast, issued at a par value of $1.00.

31. At the time Ran and Li made these misrepresentations to plaintiff, Ran and Li knew that they were not true, and never intended to give plaintiff the benefits of his labors. Rather, Ran and Li intended to induce plaintiff to work for more than two years for a deeply discounted salary; to spend his own money on TrafficCast expenses for which he would not be reimbursed; and to forego more promising opportunities, in order to get the benefit of plaintiff's considerable expertise in developing the startup business.

32. Plaintiff reasonably relied on the promises of Ran and Li, and forewent other business opportunities in order to work for TrafficCast for more than two years; contributed his knowledge and expertise to developing TrafficCast; and contributed considerable effort and specialized knowledge to developing the business.

33. The misrepresentations by Ran and Li were material. They went to the heart of plaintiff's employment relationship with defendant TrafficCast.

34. At the time they made these misrepresentations, Ran and Li knew that they were false, and intended to induce plaintiff to rely on them to his detriment, in order to cause plaintiff to work for free for TrafficCast, to contribute his own money towards the development of TafficCast and toward expenses incurred in the development of TrafficCast.

35. Plaintiff's detrimental reliance on Ran's and Li's misrepresentations in this regard, was reasonable. TrafficCast had (and has) considerable potential as a startup, valuable intellectual property, and convincing (if insincere) founders.

36. As a result of defendants' intentional misrepresentations to plaintiff, plaintiff has lost over $2M in lost shares, salary, expenses, and costs.

### Count III: Breach of Fiduciary Duty, Against Defendants

37. Plaintiff incorporates by reference, as if fully set forth herein, Paragraphs 1 through 36.

38. Defendants Ran and Li owed plaintiff a fiduciary duty. In a close corporation such as TrafficCast, the relationship among stockholders must be one of trust, confidence, and

00093419.DOC

6

absolute loyalty if the enterprise is to succeed. In a close corporation, the stockholders owe each other a fiduciary duty of the utmost good faith and loyalty.

39. Defendant Ran and Li breached their fiduciary duty owed to plaintiff by freezing him out of the company and denying him his salary, reimbursement for incurred travel and related business expenses, and shares of the company that they had promised him.

40. Defendants' breach of fiduciary duty owed to plaintiff caused plaintiff to suffer monetary damages of over $2M.

### Count IV: Breach of Contract, Against Defendants

41. Plaintiff incorporates by reference, as if fully set forth herein, Paragraphs 1 through 40.

42. Plaintiff and defendants had an oral contract of employment and an oral contract under which plaintiff stood to receive 1,848,000 shares of TrafficCast for his efforts and expertise. These contracts were memorialized in many different writings, including but not limited to, TrafficCast Business Plans.

43. Plaintiff performed his duties under the subject contracts. He worked on a full-time basis for TrafficCast for more than two years, from February of 2000 to October of 2002. When working for TrafficCast, he expended his best efforts and contributed considerable experience and expertise to the development of the new company.

44. He worked for TrafficCast in consideration for an annualized salary of $110,000, which was deferred by mutual agreement; with the understanding that any out-of-pocket expenses on behalf of TrafficCast would be reimbursed by TrafficCast; and with the understanding that he owned 1,848,000 shares of TrafficCast, which would later become valuable, and would later be valued at about $1.8M.

45. Defendants breached their contract with plaintiff. They owe him about $270,000 in deferred salary, about $25,000 in unreimbursed expenses, and 1,848,000 shares of TrafficCast. Plaintiff sent an email, dated 2/19/03 requesting outstanding travel expenses and an explanation of how TrafficCast would settle the obligations. Plaintiff received only a conclusory response from TrafficCast counsel, Kevin J. Palmersheim, dated 4/10/03, in which counsel incorrectly identified Pritchard as "an independent contractor" who was "overpaid." Plaintiff sent a demand letter to the defendants Ran and Li, dated 8/21/03, requesting settlement of their obligations. No response of any kind was made.

46. Plaintiff has been damaged by defendants' breach of contract, in the amount of over $2M.

**Count V:  Quantum Meruit Recovery Against Defendants**

47. Plaintiff incorporates by reference, as if fully set forth herein, Paragraphs 1 through 46.

48. Plaintiff worked diligently and effectively, using his best efforts, for TrafficCast from February of 2000 until at least October of 2002.  As detailed above, plaintiff was promised an annual salary of $110,000, reimbursement of out-of-pocket expenses incurred for TrafficCast, and 1,848,000 shares of TrafficCast.

49. However, in the alternative, should there be a finding that no contract existed, plaintiff is still entitled to recover his actual damages based on a quasi-contract, or quantum meruit recovery.  Otherwise, plaintiff would have worked for more than two years at a deeply discounted salary, and defendants would have been unjustly enriched by plaintiff's work for TrafficCast.

50. Under this Count for quantum meruit recovery, plaintiff is entitled to recover approximately $295,000 in unpaid salary and benefits and unreimbursed expenses.

**Count VI:  Wrongful Termination, Against TrafficCast**

51. Plaintiff incorporates by reference, as if fully set forth herein, Paragraphs 1 through 50.

52. If plaintiff is considered to have been an employee of TrafficCast between February of 2000 and October of 2002, then plaintiff has not received his compensation for past services and salary already earned, in the amount of approximately $270,000.

53. If TrafficCast is considered to have been plaintiff's employer, his employer owes him a duty of good faith and fair dealing.  Under such duty, his employer must pay plaintiff for salary already earned in its employ.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor as follows:

1. Granting him damages in the approximate amount of $2,143,000 as detailed above;

2. Granting plaintiff multiple or punitive damages because of defendants' intentional fraud;

3. Granting plaintiff, under applicable law, his attorneys' fees, prejudgment interest, post-judgment interest, and/or costs; and

4. Awarding such other and further relief as this Court deems just and proper.

00093419.DOC

8

## JURY DEMAND

Demand is hereby made for trial by jury on all issues so triable.

PLAINTIFF, ROBERT D. PRITCHARD,
By His Attorneys,

MICHIENZIE & SAWIN, LLC

Dated: 9/29/06    By: _____/s/ John Barker_____
Paul Michienzie – BBO NO: 548701
John C. Barker – BBO NO: 637406
745 Boylston Street, 5th Floor
Boston, MA 02116-2636
Tel: 617-227-5660


## CERTIFICATE OF SERVICE

I, John C. Barker, attorney for plaintiff hereby certify that on this 29th day of September 2006, the following counsel of record were electronically served with the foregoing Amended Complaint and Jury Claim:

Brian A. Gillis, Esq.
Law Offices
45 School Street
Boston, MA 02108

Kevin J. Palmersheim, S.C.
Haley Palmersheim, S.C.
1424 N. High Point Road, Suite 202
P.O. Box 628005
Middletown, WI  53562-8005

_____/s/ John Barker_____
John C. Barker