**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

---

**ROBERT D. PRITCHARD,**

        Plaintiff,

vs.

                                          **Case No.    05CV11135MLW**

**TRAFFICCAST, INC., BIN RAN,**
and **CONNIE JING LI,**

        Defendants.

---

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TO STAY DEPOSITIONS

---

The defendants, TrafficCast, Inc., Bin Ran and Jing (Connie) Li, hereby state their opposition to the plaintiff's motion to compel production of documents and to stay depositions recently filed on the grounds that it is based misleading statements to this Court and is without any basis.   In support, the defendant states as follows:

    1.    On December 28, 2006, defendant TrafficCast, Inc. filed a motion with this Court, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, requesting the entry of a protective order to prevent the wrongful disclosure of confidential, proprietary business information, including intellectual property, trade secrets and other business information that is critical to the defendant's business.[1]   Prior to filing its motion with the

---

[1]  The defendants refer to defendant TrafficCast's motion for a protective order for a description of the confidential and proprietary information at issue, and incorporate that motion herein by reference pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

Court, the defendant repeatedly attempted to reach an agreement on this matter with the plaintiff, Robert Pritchard, that would protect the information of both parties produced in discovery from wrongful disclosure, but the plaintiff refused and instead insisted on retaining an unfettered right to disclose to anyone any information provided by the defendants.

      2.      On January 8, 2007, the plaintiff filed with this Court his "**Partial Opposition**" to the defendant's motion for a protective order regarding its confidential and proprietary business information. In his "partial opposition," the plaintiff stated:

"**Plaintiff Does Not Oppose a Confidentiality Agreement in This Case.**" Plaintiff's Partial Opposition, at p.1, filed herein (emphasis in original). In his "partial opposition," the plaintiff makes it clear that, while he does not oppose the entry of a protective order, he seeks an order that provides nothing but illusory protection for the defendant's confidential and proprietary information. Id., at pp. 2-6. For example, the plaintiff has admitted that he demanded that he be allowed to show confidential information to individuals who had not agreed in writing to be bound by the terms of the Protective Order. Id., §B, pp. 3-4. As another example, **the plaintiff has also demanded that he be allowed to retain *the defendant's* confidential and proprietary business information *after* the conclusion of the lawsuit**. Id., §D, p. 4. His only explanation for this demand is that his counsel "normally keeps case files for several years," to "be available for tax purposes, or in the event of subsequent litigation." Id. The defendant's confidential and proprietary business information has no conceivable relevance to the plaintiff's taxes or any of his subsequent litigation, and such claims reveal the spurious nature of the plaintiff's "partial opposition."

Most important and telling, in his efforts to avoid providing any protection to the defendant's confidential and proprietary business information, the plaintiff refuses to agree to any confidentiality agreement whereby liquidated damages may be imposed for violations. The plaintiff claims that he should be entitled to litigate, and thus to impose substantial additional unnecessary expense on the defendants, whether the plaintiff's disclosure of designated confidential information was "inadvertent" or "if the propriety of such disclosure was disputed between the parties." Plaintiff's Partial Opposition, at pp. 5-6. The defendant's proposed protective order includes provisions that provide the plaintiff a mechanism for challenging any designation of confidentiality by the defendant through this Court. That proposed protective order also makes it perfectly clear—as **any** protective order would—that, if the plaintiff receives information or documentation that is designated as "Confidential," the plaintiff may not simply dispute its confidentiality and then release the information to third-parties. Instead, the plaintiff must first seek a ruling by the Court **before the plaintiff may disclose information designated as confidential**. See Defendant's Proposed Protective Order, ¶7, pp. 3-4, filed herein as Exhibit 1 to Defendant's Motion for Protective Order, dated December 28, 2006. As the plaintiff has admitted in its motion to compel, the plaintiff is demanding a unilateral right to disclose the defendant's information designated as confidential under any protective order, **without a prior determination by the Court on the appropriateness of the designation.** Plaintiff's Partial Opposition, at pp. 5-6 ("Plaintiff is not willing to agree to such draconian terms."). Accordingly, the plaintiff has revealed that his objective of his "partial opposition" to the defendant's motion for a protective order is simply to obtain an order that provides no real protection to the defendant.

The plaintiff also objects to including any liquidated damages provision for disclosure of confidential information, even though such provisions are an integral part of any protective order. These provisions provide a remedy for violations where damages from disclosures of confidential information are difficult to determine and discourage disregard for the importance of preserving the confidentiality of the information. Because the plaintiff has no confidential information of his own, and only defendant TrafficCast is in a position to suffer harm from an improper disclosure, he insists that the Court's protective order must not include any such provision. Instead, he proposes to require the parties to engage in separate, and no doubt protracted, proceedings upon any violation of the Court's order. Because any such proceedings will only impose substantial, unnecessary expenses on the parties, and will not serve the purpose of preserving the confidential nature of information for which the order would be intended to protect, this Court should reject the plaintiff's efforts to avoid responsibility for preserving the confidentiality of information provided and instead adopt the order proposed by defendant TrafficCast.

3.   In order to accomplish his objective of obtaining complete freedom to use or disclose at will the defendant's confidential information, the plaintiff has now filed a motion to compel production of documents with this Court. In his motion, the plaintiff has failed to disclose essential information to the Court and misstated other information. First, the plaintiff failed to inform the Court that the defendants produced all of their documents (confidential and non-confidential) to the plaintiff on November 6, 2006, subject only to the plaintiff's agreement to preserve the confidentiality of the defendant's confidential and proprietary business information. See Exhibit 1 hereto, Email to

Plaintiff's Counsel, dated November 6, 2006, with Proposed Protective Order for Execution by Plaintiff's Counsel.[2] As discussed above and in defendant TrafficCast's motion for a protective order, the plaintiff's only response was to refuse to enter into a protective order that would preserve the confidentiality of the defendant's information and instead to "look for [the defendant's] forthcoming Motion for a Protective Order." See Exhibit 3 hereto, Email from Plaintiff's Counsel, dated November 22, 2006.

Second, in his motion, plaintiff Pritchard identifies 2 categories of documents that he asserts are non-confidential and should be produced without any protective order. These documents are as follows:

> 1) the plaintiff's 1099 tax forms that he received for the years 2000, 2001 and 2002; and
>
> 2) the "countless" email correspondence between the plaintiff and TrafficCast, "copies of which Pritchard already has and cannot be categorized as 'confidential.'"

See Plaintiff's Motion, pp. 2-3. The first category consists of the 1099 forms that defendant TrafficCast provided to the plaintiff from 2000 to 2002. The second category consists of emails "which Pritchard already has." Id. It is to obtain these documents, which—according to the plaintiff himself—the plaintiff already has in his possession, that the plaintiff has filed a motion to compel production of documents with this Court. Such patently bad faith litigation tactics should not be tolerated by this Court and the

---

[2] In his motion, the plaintiff indicates that the defendants did not produce their documents to the plaintiff until November 21, 2006. See Plaintiff's Motion, at p. 2. Not only did the defendants' counsel confirm the availability of these documents on November 6, 2006, he also reconfirmed that availability again one week later, on November 13, 2006. See Exhibit 2 hereto, Email to Plaintiff's Counsel, dated November 13, 2006. It was misleading for the plaintiff to omit these emails and their information from his motion, and outright deceptive to indicate contradictory information to the Court.

plaintiff's motion should be denied, with costs awarded to the defendants pursuant to Rule 37(a)(4)(B).

The plaintiff's characterization of "countless" emails between plaintiff Pritchard and defendant TrafficCast as "non-confidential" further underscores the essential need for an appropriate protective order to protect and preserve the confidential nature of the defendant's information and documents. See Plaintiff's Motion, p. 3. Plaintiff Pritchard provided services as a subcontractor for the defendant from some time in 2000 until about June 2002. As the plaintiff was providing his services from his home office in Massachusetts to TrafficCast in Wisconsin, much of his communication took place by email. While Pritchard sees those email communications as "non-confidential," nearly all of the communications include various types of confidential and proprietary information, such as business strategies, customer lists, potential target customers and contact strategies, key financial information of TrafficCast, and information concerning its patents and intellectual property. The plaintiff apparently believes that, because he received that information while providing services for TrafficCast, he is free to disseminate it to anyone without regard for its confidentiality. Accordingly, it is urgent that this Court act forthwith on the defendant's pending request for a protective order.

4. The plaintiff's motion to compel production of documents is actually nothing but a smokescreen for his refusals to provide required discovery to the defendants and to appear for his deposition. On November 6, 2006, the defendants requested an opportunity to inspect the plaintiff's production of documents in accordance with his Rule 26 Automatic Disclosure obligations. See Exhibit 1 hereto, Email to Plaintiff's Counsel, dated November 6, 2006. At that time, unlike the defendants, the

plaintiff did not assert any claim of confidentiality as to any of his documents or information. In response, the plaintiff's counsel claimed that "[t]he documents that we are producing on plaintiff's behalf as part of his Initial Disclosures are currently available for inspection." See Exhibit 4 hereto, Letter from Plaintiff's Counsel, dated November 8, 2006. Despite claiming that the plaintiff's documents were "currently available," his counsel instead ignored repeated requests for a date and time to inspect the documents at the offices of the plaintiff's counsel. See Exhibits 2 & 3 hereto, Email to Plaintiff's Counsel, dated November 13, 2006, and Email from Plaintiff's Counsel, dated November 22, 2006. Even after the plaintiff's counsel finally offered a date in December for the inspection of his documents, and defendants' counsel confirmed the date in writing that same day (3 days prior to the inspection), the plaintiff still suggests that he had little or no notice of the defendants' inspection of his documents. See Exhibit 5 hereto, Emails to and from Plaintiff's Counsel, dated November 28, 2006. All of the documents that the plaintiff has produced belong to defendant TrafficCast. As a result, the plaintiff's delays in making those documents available are particularly inexcusable.

The plaintiff has engaged in a similar pattern with respect to the defendants' efforts to schedule his deposition. A convenient date for the plaintiff's deposition was first requested from his counsel in November, 2006. At that time, the defendants sought to schedule Pritchard's deposition for a date prior to the end of November. Instead, the plaintiff's attorneys ignored these requests, and then on November 22, 2006 (late Wednesday afternoon, the day before the Thanksgiving Day holiday), the plaintiff's attorneys would only state, "As to deposition dates for plaintiff, we are tentatively looking ahead to January, but I have not been able to clear specific dates with Mr.

7

Pritchard." See Exhibit 3 hereto, Email from Plaintiff's Counsel, dated November 22, 2006. The plaintiff and his 2 lawyers have continued to play games with the scheduling of depositions, and justify their actions by pointing out that the Court's deadline for completion of discovery is not until May 31, 2007. See Plaintiff's Motion, p. 3. They further assert that there are "few depositions anticipated," "such that there is ample time" to conduct them." Id. The time allowed under the Court's scheduling order was provided for the purpose of giving the parties sufficient time to complete necessary discovery, and was never intended to provide the plaintiff with an excuse for avoiding or unnecessarily delaying his discovery obligations.

The defendants' served a Notice of Deposition for the plaintiff's deposition on January 2, 2007 when his 2 attorneys refused to commit to an available date. In his motion, filed on January 5, 2007, the plaintiff never disclosed to the Court that a duly served deposition notice was pending. Despite his obligations under the Federal Rules of Civil Procedure, the plaintiff, as he has throughout, simply disregarded his obligations and failed to appear for his deposition as required under this Court's rules. As a result, the plaintiff has turned what should be nothing more than routine discovery issues—such as a protective order for what he admits is confidential information entitled to protection, the production of documents, and the scheduling of depositions—into a veritable mess, 2 discovery motions and a substantial waste of the parties' resources, as well as a waste of the resources of this Court. Unless this Court takes action to stop such conduct, the plaintiff will only be encouraged to continue and to engage in other improper litigation tactics. Therefore, this Court should issue an order denying the plaintiff's motion, awarding costs to the defendants pursuant to Rule 37(a)(4)(B), and entering the protective

order as requested by the defendant.

>Respectfully submitted,
>
>By the Defendants,
>
>\_\_\_\_\_s/ Brian A. Gillis, Esq._____
>Brian A. Gillis, Esq.  BBO# 547767
>Forty-Five School Street
>Boston, Massachusetts  02108
>(617) 720-4443

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon each party appearing pro se and the attorney of record for each other party by electronic mail delivery on January 12, 2007.

>\_\_\_\_\_s/ Brian A. Gillis, Esq._____
>Brian A. Gillis, Esq.

```
From: Brian A. Gillis, Esq. [bgillis@socialaw.com]
Sent: Monday, November 06, 2006 5:18 PM
To: 'John Barker'
Subject: Pritchard v TrafficCast et al

Attachments: Protective Order.doc; Defendants' Rule 26 Disclosure.pdf
```

Dear Counsel:


I have attached a copy of the Defendants' Automatic Disclosure Pursuant to Rule 26.  I have also attached a proposed Protective Order for your review.  Upon the entry of the Protective Order, all documents being produced to the plaintiff will be released for inspection and copying.  I propose to submit the attached protective order to the Court with a joint motion.  Please advise.


I also wish to make arrangements to come to your office this week to inspect the documents being produced by the plaintiff at this time.  Please advise as to when the documents will be available.


Sincerely,


Brian A. Gillis, Esq.

From: Brian A. Gillis, Esq. [bgillis@socialaw.com]
Sent: Monday, November 13, 2006 12:48 PM
To: 'John Barker'
Subject: Pritchard v TrafficCast

Dear Mr. Barker:


I am responding to your letter dated November 8, 2006.  First, your requested changes to the proposed Protective Order would eviscerate its provisions, so that the "Protective Order" would provide absolutely no protection for my client's confidential, proprietary business information.  As a result, your statement that the "concept" of a confidentiality agreement as being acceptable to you and your client is nothing but empty rhetoric.  The defendants will not release any documents to you that contain confidential, proprietary business information until an appropriate order has been entered by the Court.  Since you and your client appear to have no interest in any order that will provide any meaningful protection to my client, I will proceed with the preparation and filing of a motion with the Court.  In the meantime, my client's non-privileged documents that do not contain any confidential, proprietary business information, and which have been available to the plaintiff for inspection and copying since November 6, 2006, remain available at this time.


Second, your suggestion that the plaintiff has documents for which he is claiming some sort of confidential, proprietary business interest of his own, so that a Protective Order may be required before he produces his documents, is preposterous.  The only documents that your client may have that could conceivably fall within the scope of any such claim of confidentiality would belong to my client.  As a result, for the plaintiff to be asserting any sort of claim of privilege or confidentiality over my client's documents is not founded on any principle of law.  Accordingly, as I requested on November 6, 2006, I wish to inspect the plaintiff's production of documents immediately and without any further unnecessary and improper delay.  Please advise when the plaintiff will make his documents available for inspection and copying as required by the Court's order.  If the plaintiff continues to delay in producing his documents or will not produce them, please advise me so that I can proceed with an appropriate motion before the Court.


Third, please provide me with 2 or 3 dates when you and the plaintiff will be available for the plaintiff's deposition in this matter.


Sincerely,


Brian A. Gillis, Esq.

From: John Barker [mailto:jb@masatlaw.com]
Sent: Wednesday, November 22, 2006 2:59 PM
To: Brian A. Gillis, Esq.
Cc: Paul Michienzie
Subject: RE: Pritchard v TrafficCast


Dear Mr. Gillis:    We are responding to your email of 11/13/06 (below), concerning the proposed confidentiality agreement.  We will look for your forthcoming Motion for a Protective Order, and we will respond to any such motion.


        You must have misunderstood some portion of my previous email.  I did not mean that Pritchard would be designating any (or many) of the documents he intends to produce as "confidential" under the terms of your proposed agreement.  (One exception to this may be a few documents with personal confidential information, such as Pritchard's credit card information.)  However, I did think that we would arrange for the terms of the confidentiality agreement before exchanging documents.  Nonetheless, we have no objection to producing documents not designated as "confidential" to you before the motion practice (or permitting you to inspect those documents at our offices).


I would ask, in turn, that you copy for me and mail to me, those documents included in TrafficCast's initial disclosures that you are not intending to designate as "confidential" under your proposed confidentiality agreement.


        If we can agree on a mutually acceptable, reasonable copying charge (such as 25 cents per page), we could exchange documents by mail, rather than requiring a visit to each other's offices for in-person inspection of the documents (which we will probably want copied anyway).


        As to deposition dates for plaintiff, we are tentatively looking ahead to January, but I have not been able to clear specific dates with Mr. Pritchard.  I will get back to you soon with available dates for plaintiff's deposition.  Please also provide us with possible depo dates for defendants, in January or February.  At this point, we would like 3 consecutive days, for depositions of Bin Ran, Connie Jing Li, and Jerome Chen.  Thank you, John Barker


-------------------------------------------------------------------------------


From: Brian A. Gillis, Esq. [bgillis@socialaw.com]
Sent: Wednesday, November 22, 2006 4:39 PM
To: 'John Barker'
Subject: RE: Pritchard v TrafficCast

Dear Mr. Barker:


On the late afternoon of the day before the Thanksgiving holiday, you responded to my email that I sent to you nine (9) days earlier on November 13, 2006.  Yet the plaintiff still has not produced a single document nor have you provided me

with a date when I can come to your office to inspect the plaintiff's documents as I first requested on November 6, 2006. Further, in response to my request for a convenient date for the plaintiff's deposition, you tell me that you are "tentatively looking ahead to January, but have not been able to clear dates with Mr. Pritchard." You also want me to copy documents for you.

First, your delay and the substance of your response indicate that the plaintiff does not intend to comply with his discovery obligations under the Court's orders and the rules. I will plan to be at your office on Monday, November 27, 2006, at 10:00 a.m. to begin my clients' inspection of the plaintiff's documents. If the volume of documents is substantial, after inspecting them I will make arrangements to have an outside photocopying service pick up the documents at your office, copy them, return the originals to your office, and deliver the copies to my office with the invoice for its copying charges. This is a fairly standard procedure that I have followed for years, and I find it a customary practice in business litigation such as the action that your client has brought against my clients.

Second, I will not wait until January for a "tentative" date from the plaintiff for his deposition. When I requested dates for the plaintiff's deposition more than a week ago, I had expected to schedule the plaintiff's deposition for a date prior to the end of November, 2006. I will not agree to wait 2 more months to schedule the plaintiff's deposition. Accordingly, if you will not provide me with 2 or 3 dates in early to mid-December, 2006 when you and your client will be available for his deposition, I will select a date and serve a notice in accordance with the Court's orders and the rules.

Third, the defendants' non-privileged documents have been available for inspection since November 6, 2006 and remain available for inspection at this time. Neither my clients nor I have the staff necessary to undertake the photocopying of a large volume of documents for the plaintiff in this matter. We will agree, however, to allow an outside photocopy service of your choosing pick up the documents, copy them, return the originals to the defendants, and deliver the copies to your office with the invoice for its copying charges. The service must provide an assurance that it will return the documents in the exact same condition as when it received them and that no one other than its own personnel will have access to them while they are out of the possession of the defendants. Once again, this is a fairly standard procedure that I have found to be a customary practice in business litigation such as the action that your client has brought against my clients.

Fourth, in light of the plaintiff's refusal to enter into a protective order that will protect the confidentiality of my clients' proprietary business information, including their intellectual property and other extremely sensitive business information, I will serve and file a motion for a protective order following the holiday as you requested.

Finally, I would be happy to accommodate your request for 3 consecutive dates in January or February to conduct depositions of my clients. I would also be happy to inquire whether the non-party witness, Mr. Jerome Chen, will agree to be available on one of those dates for his deposition as you have indicated. I will also inquire whether Mr. Chen will agree to be available for your

deposition without the need for serving him with a subpoena as required by the Court's rules.  Please advise whether you propose to conduct these depositions at the office of the plaintiff's local counsel or some other location.  I believe the defendants' counsel would be willing to provide a conference room to conduct the depositions if that would be more cost effective and convenient for the parties and the witness.  Please advise me at your earliest convenience as to how you wish to proceed.  In the meantime I will contact my clients and Mr. Chen regarding their availability and Mr. Chen's amenability to appear as discussed above, and I will respond to you as soon after the Thanksgiving Day holiday as possible.

If you have any questions, please contact me at any time.  I hope you and your family have a good Thanksgiving Day holiday.

Sincerely,

Brian A. Gillis, Esq.



John C. Barker

745 Boylston Street
Boston, Massachusetts
02116-2636

Telephone
617 227-5660

Facsimile
617 227-5882

Email
jb@masatlaw.com

November 8, 2006

**VIA FACSIMILE AND FIRST CLASS MAIL**
**(617) 720-1226**

Brian A. Gillis, Esq.
Law Offices
45 School Street
Boston, MA 02108

> Re:   Pritchard v. TrafficCast, Massachusetts Federal Court, Eastern District
> of Massachusetts, Docket No. 05CV-11135-MLW
> and
> TrafficCast, Inc. v. Robert D. Pritchard
> <u>Wisconsin Case Number: 05-C-0557-S</u>

Dear Mr. Gillis:

We are in receipt of the draft Protective Order that you emailed to me in the above-referenced Pritchard case. The concept of such a confidentiality agreement is acceptable to us, and most of the terms of the draft that you sent are also acceptable.

One area of change that we would request is that the use of documents designated as "Confidential Material" not be restricted to this one action. Toward that end, I have made certain changes to ¶¶5 and 12 in your draft, and I am enclosing herewith a redlined version of the draft Protective Order, along with a new draft with all our redlined changes accepted. I have also requested changes to ¶12 to make the penalty for violation of the Protective Order less draconian. We do not wish to specify liquidated damages.

Please feel free to call me or Paul Michienzie if you wish to discuss the terms of this confidentiality agreement. I am assuming from your email that you wish to have the Protective Order in place before either side inspects the other's document production, but please let me know if this is not the case. The documents that we are producing on plaintiff's behalf as part of his Initial Disclosures are currently available for inspection, and we can arrange times to inspect each other's document productions at our mutual convenience. Thank you.

Sincerely yours,

John C. Barker

JCB/tmm
Enclosures
C3937.001

cc:   Paul Michienzie, Esq.

{00096763.DOC}

```
From: Brian A. Gillis, Esq. [bgillis@socialaw.com]
Sent: Tuesday, November 28, 2006 4:18 PM
To: 'John Barker'
Cc: 'Paul Michienzie'
Subject: RE: Pritchard v TrafficCast
```

Dear Mr. Barker:


In response to your latest proposal for the plaintiff to produce his documents on Friday, December 1, 2006, at 10:00 a.m., I will plan to be at your office at that time to inspect the documents being produced at that time.  In light of the fact that you have not disclosed the volume of documents being produced, I cannot agree to allow either your office or an outside copy service to incur charges for which my clients will be responsible.


Sincerely,


Brian A. Gillis, Esq.


--------------------------------------------------------------------------------

```
From: John Barker [mailto:jb@masatlaw.com]
Sent: Tuesday, November 28, 2006 3:24 PM
To: Brian A. Gillis, Esq.
Cc: Paul Michienzie
Subject: RE: Pritchard v TrafficCast
```

Mr. Gillis:  I am working on an emergency case this week, and my schedule is shifting by the hour.  I now have to be at a site both tomorrow and Thursday, at least in the mornings.  Friday 12/1 is still free, but this may change.  If you insist on coming to our office to inspect documents, please let me know in advance so that I can plan to have documents ready for you.  As I have said, I would prefer to just send you the documents and agree on a reasonable copying charge (such as 25 cents per page).  Or I could send the documents to a copy service and you could retrieve the copies from that service at cost.  Please advise.   John Barker


--------------------------------------------------------------------------------

```
From: John Barker
Sent: Monday, November 27, 2006 8:47 AM
To: 'Brian A. Gillis, Esq.'
Cc: Paul Michienzie
Subject: RE: Pritchard v TrafficCast
```

Mr. Gillis:  I first received your message below on 11/27/06, announcing that you were coming to my office on 11/27/06 at 10 am to inspect documents.  We are not available at that time, so you will not be able to view the documents at that time.  Both of us are unavailable (on another case) until Wed, 11/29/06.  If you are free on 11/29, 11/30, or 12/1 of this week, those would be acceptable

days for you to inspect the documents.  We will respond to the remainder of your
email below shortly.  Thank you, John Barker