UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05CV-11135-MLW
Consolidated with 05CV-12288-MLW

| | |
|---|---|
| ROBERT D. PRITCHARD, <br> Plaintiff, | ) <br> ) <br> ) <br> ) |
| v. | ) <br> ) |
| TRAFFICCAST, INC.; BIN RAN; AND CONNIE JING LI, <br> Defendants. | ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE A REPLY BRIEF**

The plaintiff Robert D. Pritchard ("plaintiff" or "Pritchard"), through his counsel of record, hereby moves this Honorable Court for leave to file a reply brief to two recent pleadings filed by defendants in the above-captioned cases, Defendants' Opposition to Plaintiff's Motion to Compel Production of Documents and to Stay Depositions [Docket No. 42] and Defendants' Report to Court Regarding Settlement [Docket No. 43]. These two pleadings contain significant inaccuracies and misrepresentations, as described in the attached [proposed] Reply Brief, and plaintiff would be at a significant disadvantage if these misrepresentations were allowed to stand without response. Therefore, plaintiff seeks this Court's leave to file the attached Reply Brief, pursuant to Local Rule 7.1(B)(3).

PLAINTIFF, ROBERT D. PRITCHARD,
By His Attorneys,

MICHIENZIE & SAWIN, LLC

Dated: 1/18/07          By: *John Barker*

{00105475.DOC}

1

Paul Michienzie – BBO NO: 548701
John C. Barker – BBO NO: 637406
745 Boylston Street, 5th Floor
Boston, MA 02116-2636
Tel: 617-227-5660

## CERTIFICATE OF SERVICE

I, John C. Barker, attorney for plaintiff hereby certify that on this 18th day of January 2007, the following counsel of record were electronically served with the foregoing Motion to File Reply Brief:

Brian A. Gillis, Esq.
Law Offices
45 School Street
Boston, MA 02108

Kevin J. Palmersheim, S.C.
Haley Palmersheim, S.C.
1424 N. High Point Road, Suite 202
P.O. Box 628005
Middletown, WI   53562-8005

*/s/ John Barker*
John C. Barker

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05CV-11135-MLW
Consolidated with 05CV-12288-MLW

ROBERT D. PRITCHARD,
    Plaintiff,

v.

TRAFFICCAST, INC.; BIN RAN; AND CONNIE JING LI,
    Defendants.

**PLAINTIFF'S REPLY TO DEFENDANTS' RECENT PLEADINGS
CONCERNING DOCUMENT PRODUCTION AND SETTLEMENT NEGOTIATIONS**

The plaintiff Robert D. Pritchard ("plaintiff" or "Pritchard"), through his counsel of record, hereby submits this proposed Reply Brief to two recent pleadings filed by defendants in the above-captioned cases, Defendants' Opposition to Plaintiff's Motion to Compel Production of Documents and to Stay Depositions [Docket No. 42] and Defendants' Report to Court Regarding Settlement [Docket No. 43]. Because these two pleadings contain inaccuracies and misrepresentations, plaintiff wishes to file this Reply memorandum and seeks this Court's leave under Local Rule 7.1(B)(3).

**Summary of Defendants' Misrepresentations in the Pleadings**

Defendants' recent pleadings make three significant misrepresentations: first, defendants have not produced any documents in this litigation, contrary to their representations in their Opposition to Plaintiff's Motion to Compel (p.4); second, contrary to defendants' representations in their Report Regarding Settlement (p.1), plaintiff's counsel has never refused to meet with defense counsel concerning settlement; and third, contrary to defendants' representation in the

latter pleading (p.4), plaintiff provided a settlement demand long before the June 2006 mediation. These are significant misrepresentations that plaintiff's counsel wishes to bring to the Court's attention.

**Defendants' Document Production**

Defendants' Opposition states that "the defendant produced all of their documents (confidential and non-confidential) to the plaintiff on November 6, 2006, subject to the plaintiff's agreement to preserve the confidentiality" of certain documents and information (p.4). But neither plaintiff nor his counsel have ever received any documents, nor have any documents been made available by defendants or defense counsel, in this litigation. Plaintiff's counsel have repeatedly requested that defense counsel tell them when they can come pick up these purportedly available documents, or have a copy service come pick them up, and defense counsel has refused to provide any date or make the documents available. Defense counsel has also refused to copy the documents for plaintiffs counsel, claiming he does not have the staff.

**Plaintiff's Counsel Has Never Refused to Meet with Defense Counsel Concerning Settlement.**

Defendants' Report to Court Regarding Settlement (p.1) states as follows:

> The plaintiff and his counsel have refused to meet with the defendants' counsel to explore the possibility of settlement by January 12, 2007 as required. The defendants' counsel repeatedly attempted to set up a meeting with the plaintiff and his counsel on or before January 12, 2007 to conduct the plaintiff's deposition, **with a plan** to explore the possibility of settlement with the plaintiff and his counsel at that time. [emphasis added]

First, it is inaccurate to say that plaintiff failed to appear for a 1/12/07 deposition. Plaintiff's counsel told defense counsel repeatedly, and first in a communication dated 12/28/06 [*see* Barker Affidavit ¶5, Docket No. 39], that plaintiff's counsel were not available for that particular date, 1/12/07. Despite these communications, defense counsel sent a deposition notice for that date

anyway, disregarding any scheduling courtesy. Plaintiff's counsel has offered many available dates for plaintiff's deposition and has requested that they receive defendants' documents sufficiently before this deposition to enable them to prepare for plaintiff's deposition.

Second, it is untrue that the plaintiff's counsel refused to meet with defense counsel concerning settlement, or that defense counsel attempted to set up a settlement-discussion meeting before 1/12/07 (Docket No. 43, p.1). Defense counsel never asked for any such meeting. His own language that he had "a plan" to discuss settlement belies this assertion; his plan was not expressed to plaintiff's counsel. It is false that "the defendant has offered several available dates upon which to meet" (Docket No. 43, p.2). Neither any defendant nor their counsel have offered any such date.

**Plaintiff's Settlement Status Report to the Court**

Plaintiff's counsel read this Court's Scheduling Order [Docket No. 31] literally at ¶5. The language at that paragraph states that "Counsel for the parties shall meet at least once to explore the possibility of settlement and report to the Court by January 12, 2007 the status and prospects for settlement." Plaintiff's counsel believed that the mediation that occurred in June 2006 satisfied this requirement, and therefore reported on that meeting (and on other phone settlement discussions). If this interpretation was incorrect, as defendants suggest, plaintiff's counsel will certainly arrange a meeting with defense counsel at this Court's instruction. As indicated in plaintiff's status report concerning settlement [Docket No. 40], plaintiff is also willing to engage in mediation, whether it be private or through the court system.

However it is critical to note that defense counsel never contacted plaintiff's counsel to try to arrange any settlement discussion before the 1/12/07 deadline. Notwithstanding his assertions to the contrary, defense counsel did not try to set up a settlement meeting with

plaintiff's counsel before 1/12/07 (Docket No. 43, p.1). Further, it makes no sense that defense counsel would select 1/12/07, the deadline date itself and a date on which he knew weeks in advance that plaintiff's counsel were not available, for a good-faith settlement discussion.

**Plaintiff Provided Defendants With a Settlement Demand Long Before the Mediation Session in 2006.**

Defendants state in their Report to Court Regarding Settlement (p.4) that "Prior to the mediation [in June 2006] no settlement demand was ever presented, despite the repeated requests" by defense counsel. This is demonstrably false. The 2003 demand letter attached hereto was plaintiff's first demand to defendants. Since this demand, plaintiff's counsel have reiterated plaintiff's overall demand repeatedly (*see* 2005 letter also attached hereto) and did so before the mediation began in June 2006 [*see* Michienzie Affidavit ¶4, Docket No. 40].

**Conclusion**

The party that has delayed the process and not produced documents here is the defendants' side. Plaintiff produced his documents on schedule, and his counsel have tried to move the process of agreeing on a confidentiality agreement along as much as possible. Plaintiff's counsel have never refused to meet with defense counsel concerning settlement, have never refused to produce documents (unlike defendants), and have never refused to provide a settlement demand. Plaintiff respectfully asks this Court to order immediate production of defendants' documents, before any depositions in the case, and to disregard the express misrepresentations by defense counsel detailed above.

                      PLAINTIFF, ROBERT D. PRITCHARD,
                      By His Attorneys,

                      MICHIENZIE & SAWIN, LLC

Dated: 1/18/07          By: _____
                             Paul Michienzie – BBO NO: 548701
                             John C. Barker – BBO NO: 637406
                             745 Boylston Street, 5th Floor
                             Boston, MA 02116-2636
                             Tel: 617-227-5660

## CERTIFICATE OF SERVICE

I, John C. Barker, attorney for plaintiff hereby certify that on this 18th day of January 2007, the following counsel of record were electronically served with the foregoing Reply to Recent Pleadings:

Brian A. Gillis, Esq.
Law Offices
45 School Street
Boston, MA 02108

Kevin J. Palmersheim, S.C.
Haley Palmersheim, S.C.
1424 N. High Point Road, Suite 202
P.O. Box 628005
Middletown, WI   53562-8005

_____
John C. Barker

Paul Michienzie
101 Merrimac Street
Boston, Massachusetts
02114

Telephone
617 227-5660

Facsimile
617 227-5882

Email
pm@masatlaw.com

*Michienzie & Sawin LLC*

August 21, 2003

VIA CERTIFIED MAIL - RRR
Bin Ran, PhD, President and CEO
Connie Jing Li, PhD, P.E., COO
TrafficCast, Inc.
c/o Kevin J. Palmersheim, S.C.
Haley Palmersheim, S.C.
1424 N. High Point Road, Suite 202
P.O. Box 628005
Middletown, WI  53562-8005

  Re: Robert D. Pritchard

Dear Mr. Ran and Ms. Li:

  Please be advised that I serve as counsel for Robert D. Pritchard. I am writing on his behalf to demand payment of unpaid travel and business expenses totaling $4,987.78, miscellaneous expenses totaling $21,163.74, unrealized salary and benefits in the amount of $286,750.00 and deliver possession of 1,848,000 in shares of TrafficCast, Inc. (hereafter the "Company"), representing Mr. Pritchard's founder's share in the Company. This letter shall also serve as a demand pursuant to Mass. General Laws, Chapter 93A for the unfair and deceptive acts and practices committed by each of you individually and as officers of the Company.

## Background

  In late 1999 you began discussions and ultimately in the Spring of 2000 you entered into an agreement with Mr. Pritchard concerning his ownership in the Company, ultimately to be known as TrafficCast.Com, Inc. Mr. Pritchard understood that the Company was devoted to the deployment and development of advanced traveler information systems and related business. Specifically, Mr. Ran engaged the services and expertise of Mr. Pritchard to assist Mr. Ran in the development of the business of Company, through, amongst other things, investment solicitations. As part of the growth of the Company, a Boston office was formed.

{00039968.DOC}

MICHIENZIE & SAWIN LLC

Bin Ran, PhD., President and CEO
Connie Jing Li, PhD, P.E., COO
August 21, 2003
Page 2

In exchange for Mr. Pritchard's services and for the expenditure of his own assets, Mr. Ran agreed to provide Mr. Pritchard with 1.848 million shares in the Company and to make him an officer and director of the Company. Indeed, Mr. Ran prepared corporate documents in which Mr. Pritchard was identified as Vice President and Director. These documents set forth an annual salary of $110,000.00 for Mr. Pritchard. These terms were memorialized in a Memorandum of Understanding entered into on July 7, 2000. Further, as an inducement to enlist the services and financial resources of Mr. Pritchard, Mr. Ran represented that the estimated value of the intellectual property of Company to be $8,410,000.00. Mr. Ran also represented that the company had assets of $9,338,061.41.

Based on the represented value of the company, the agreement to provide Mr. Pritchard with a founder's share of 1.848 million shares in the Company (as set forth in numerous business plans prepared by Mr. Ran), and Mr. Pritchard's appointment as Vice President and Director, Mr. Pritchard set forth to provide his services and financial resources to promote the interests of the Company, including but not limited to investment solicitations. At the same time, Mr. Pritchard was asked, and expected, to incur expenses and to defer compensation until a later date.

In the course of providing services to the Company, my client was a recipient of numerous documents generated by TrafficCast in which the value and the number of shares agreed upon was confirmed. As early as August 18, 2000, the Company represented to investors that the share price was $1.00. The Company also represented in public announcements that its management would be expanded. For example, in a company application for the Wisconsin Venture Fair, the Company represented in the Summer of 2000 that "TrafficCast management team will be expanded with CEO, CFO and Vice President, Engineering." The Company also represented that "Board of Directors and Advisory Boards are being assembled." More importantly, the company represented "current development and marketing activities are being funded by continued contributions of the management team, deferred salaries by the management team, and stock options for the development teams."

On numerous occasions, Mr. Ran wrote to my client confirming his position as a founder. For example, in an email dated January 1, 2001, Mr. Ran identified the founders, one of whom is my client. Throughout this email, my client's responsibilities were outlined, including business plan updates, employee handbooks, marketing, news releases, website updates and articles. My client was also identified as one person being in charge of fundraising.

MICHIENZIE & SAWIN LLC

Bin Ran, PhD., President and CEO
Connie Jing Li, PhD, P.E., COO
August 21, 2003
Page 3

In addition, there were other documents identifying Mr. Pritchard as Executive Vice President and a member of the management team. One document dated January 29, 2001, titled TrafficCast Update for John O'Brien, printed on Company stationary, identified Mr. Pritchard as Executive Vice President. On at least one occasion, Ms. Li and my client had discussions concerning officer liability insurance that would cover my client.

Further, in the years 2000, 2001 and 2002, business plans were generated on behalf of the Company in which my client was identified as a founder and owner of a share of 8.4 million dollars of stock in the Company. These documents identify my client as one member of the management team who deferred his salary in order to help develop and market activities on behalf of the Company. Indeed, the company identified current expenditures in July of 2000 as $130,000.00 per month. Many of these expenses were deferred salaries and actual expenses incurred by founders and members of the management team, including my client. My client was also identified as a Board Member, a member of the management team and an individual whose industry expertise added to the value of Company. Specifically, in the January 22, 2002 Business Plan Executive Summary, under the title TrafficCast Objectives, the Company had this to say about my client and others: "In order to maximize the value of TrafficCast patented processes, applications and operations over a 5-7 year horizon, TrafficCast plans to: . . . add to the traffic industry expertise of its founding partners (Professor Bin Ran; Connie Li, PhD, P.E.; Jerome Chen; and Robert D. Pritchard) . . ."

## Expenses Incurred and Compensation Deferred

In the course of providing his services and expertise to the Company, Mr. Pritchard incurred financial costs and deferred salary exceeding $325,000.00. As set forth about, the founders and officers expended their own resources and time in exchange for deferred payment of the expenses and compensation and shares in the Company. My client's expenditures are broken down as follows:

1.   Outstanding Travel and Business Expenses: **$4,987.78**

Seven travel expense invoices for $7,210.04 were submitted to Ms. Li during 2002; $2,223.26 was paid on May 2, 2002. All expenses were approved in advance and payment was promised to be made in 2002.

MICHIENZIE & SAWIN LLC

Bin Ran, PhD., President and CEO
Connie Jing Li, PhD, P.E., COO
August 21, 2003
Page 4

    2.    Unreimbursed Expenses: **$21,163.74**

During 2000-2002, Mr. Pritchard expended personal resources totaling **$21,163.74** for office and other expenses based on the promise of cash reimbursement or additional stock in the Company.

    <u>2000</u>: **$7,290.34**

    (Supplies: $1,438.27 Mobile Internet: $190.45, Telephone: $4,036.62; Auto: $1,625.00)

    <u>2001</u>: **$9,896.86**

    (Supplies: $1,473.28; ITS America/Miami Materials: $2,224.04; Mobile Internet: $237.95; Telephone: $4,336.59; Auto: $1,625.00)

    <u>2001 (January-October)</u>: **$3,976.54**

    (Supplies: $1,116.14; Mobile Internet: $150.18; Telephone: $1,491.47; Auto: $1,218.75).

    3.    Unrealized Salary and Benefits: **$286,750.00**

During 2000-2002, Mr. Pritchard deferred income in accordance with the agreement with the Company. This deferred salary was to be paid at a later date or converted into TrafficCast equity based on the rate consistently stated in the Company's Business Plans -- $1.00 per share.

    <u>2000</u>: **$105,000.00**

    Total Salary and Benefits: $165,000.00 less Salary Paid: ($60,000.00)

    <u>2001</u>: **$75,000.00**

MICHIENZIE & SAWIN LLC

Bin Ran, PhD., President and CEO
Connie Jing Li, PhD, P.E., COO
August 21, 2003
Page 5

       Total Salary and Benefits: $165,000.00 less Salary Paid: ($90,000.00)

       <u>2002 (January-October)</u>: **$88,750.00**

       Total Salary and Benefits: $123,750.00 less Salary Paid: ($30,000.00)

   4.     Unreimbursed Payments for Graphic Design Work:

Mr. Pritchard arranged for the preparation of the Company's corporate identity (logo, business cards, web-site artwork, letterhead, promotional materials, etc.). Payments for these efforts were deferred and future compensation was agreed as either future cash payments or additional Company stock.

   5.     Founder's Share Due: 22% of 8.4 Million founder's shares

       (22% of 8.4 million founders' shares) is 1,848,000 shares of TrafficCast stock.

<u>**Damages and Liability**</u>

On April 10, 2003, in response to Mr. Pritchard's inquiry concerning payment of some of the above expenses, your counsel wrote to Mr. Pritchard and indicated that he "performed limited services," was "supposedly working full-time as an independent contractor" for the Company starting in April 2000, that his services were "terminated in June 2002" and that he was "over-paid." There is no dispute, therefore, that Mr. Pritchard performed services for the Company for which he was to be compensated. However, Mr. Pritchard has not been repaid for the expenses incurred or the compensation and stock, as agreed, and there is no basis on which to refuse to compensate and repay him.

Your refusal to pay as agreed, at the least, constitutes breach of contract. However, the refusal to recognize Mr. Pritchard's right to compensation and his right to an equity position in the Company is fraudulent, which is an actionable violation of the Massachusetts Unfair Business Practices Act, M.G.L. ch. 93A, section 11 ("Chapter 93A"). Violation of Chapter 93A entitles Mr. Pritchard to costs, up to double or treble damages, and attorneys' fees.

{00039968.DOC}

MICHIENZIE & SAWIN LLC

Bin Ran, PhD., President and CEO
Connie Jing Li, PhD, P.E., COO
August 21, 2003
Page 6

    My client was fraudently induced by the Company to enter into an agreement to provide his expertise and services in exchange for a promise of deferred payment of expenses and compensation and a founder's share in the Company which the Company never intended to fulfill. Despite my client's performance, and the great and personal and financial expenditures incurred on behalf of TrafficCast, you have refused to pay Mr. Pritchard for the expenses he incurred, the promised deferred compensation and the equity position or founder's share in the Company. This refusal has occurred despite the Company's success with Noftac and Gannett Flemming, which are directly attributable to Mr. Pritchard's performance. What is most incredible is that Mr. Ran indicated that he simply chose "to go onto a different route." Such conduct is unlawful and is a violation of Chapter 93A.

    I hereby demand immediate payment of $325,000.00 plus delivery of 1.84 Million shares of stock in the Company.

                                    Very truly yours,

                                    Paul Michienzie

PM/pcb

cc:    Robert D. Pritchard

{00039968.DOC}



*Michienzie & Sawin LLC*

745 Boylston Street
Boston, Massachusetts
02116-2636

Telephone
617 227-5660

Facsimile
617 227-5882

Email
pm@masatlaw.com

June 24, 2005

**CERTIFIED MAIL/RRR**
Kevin J. Palmersheim, S.C.
Haley Palmersheim, S.C.
1424 N. High Point Road, Suite 202
P.O. Box 628005
Middletown, WI  53562-8005

Re:   Robert D. Pritchard

Dear Mr. Palmersheim:

As you may remember, this firm represents Robert D. Pritchard. We are writing to renew Mr. Pritchard's demand against TrafficCast, as set forth more fully in our letter of 8/21/03. We are assuming that you still represent TrafficCast and Mr. Bin Ran and Ms. Connie Jing Li, in this matter. If not, please forward this letter and enclosures directly to them or to their new counsel in this matter.

We are enclosing herewith, a complaint that was filed on or about 5/31/05 in U.S. District Court in Massachusetts. We are sending this copy of the attached complaint to you as a courtesy, before we have formally served the complaint on the named defendants, so that we may permit further dialogue or negotiations. Please call if you wish to discuss this matter. If we have not heard from you, we will have the attached complaint served by 7/15/05. Thank you.

Very truly yours,

Paul Michienzie

PM/tmm
C3937.
Enclosures

cc:   John C. Barker, Esq.
      Robert D. Pritchard

{00068805.DOC}