UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05CV-11135-MLW
Consolidated with 05CV-12288-MLW

|  |  |
|---|---|
| ROBERT D. PRITCHARD, <br> Plaintiff, <br><br> v. <br><br> TRAFFICCAST, INC.; BIN RAN; AND CONNIE JING LI, <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF PRITCHARD'S DISCLOSURE OF HIS EXPERT**

The plaintiff Robert D. Pritchard ("plaintiff" or "Pritchard"), through his counsel of record, hereby discloses his testifying expert in the above-captioned case, as required under this Court's Order of 9/15/06 [Docket No. 31], and F.R.C.P. 26(a)(2) and Local Rule 16.5(C).

The plaintiff anticipates using an expert concerning business valuation and valuation of plaintiff's share of TrafficCast Inc: Warren Burkholder, CBI, CBA, ASA, from New England Venture Resource Group, Inc., 231 Sutton Street, Suite 2K, North Andover, MA 01845. Mr. Burkholder's CV is attached at Exhibit 1. He will be compensated for his work at $200 per hour.

Because of the pending discovery motions, and because of defense counsel's refusal to produce any documents under F.R.C.P. 26(a)(1), plaintiff's expert is unable to complete his final expert report at this time. A preliminary report, based on plaintiff's documents and plaintiff's knowledge, is attached at Exhibit 2. Plaintiff reserves his right to serve such expert report as

{00108633.DOC}

1

necessary within a reasonable time after defendants' documents become available for plaintiff's inspection and copying.

At Exhibit 3, is a list of publications authored by Mr. Burkholder within the preceding 10 years, and a listing of other cases in which Mr. Burkholder testified as an expert at trial or by deposition within the preceding four years.

PLAINTIFF, ROBERT D. PRITCHARD,
By His Attorneys,

MICHIENZIE & SAWIN, LLC

Dated: 3/2/07      By: _____
                        Paul Michienzie – BBO NO: 548701
                        John C. Barker – BBO NO: 637406
                        745 Boylston Street, 5th Floor
                        Boston, MA 02116-2636
                        Tel: 617-227-5660

## CERTIFICATE OF SERVICE

I, John C. Barker, attorney for plaintiff hereby certify that on this 2nd day of March 2007, the following counsel of record were electronically served with the foregoing:

Brian A. Gillis, Esq.
Law Offices
45 School Street
Boston, MA 02108

Kevin J. Palmersheim, S.C.
Haley Palmersheim, S.C.
1424 N. High Point Road, Suite 202
P.O. Box 628005
Middletown, WI 53562-8005

_____
John C. Barker

{00108633.DOC}

2

# EXHIBIT 1

**Appraisers Qualifications**
**Warren S. Burkholder, Jr.**
**As of March 1, 2007**

**Professional Designations:**

The American Society of Appraisers: ASA, Accredited Senior Appraiser.
International Business Brokers Association: CBI, Certified Business Intermediary.
Institute of Business Appraisers: CBA, Certified Business Appraiser.
Commonwealth of Massachusetts, Division of Professional Licensure, Real Estate Broker #133753.
One of 4 Individuals that hold all three designations ASA, CBA, and CBI.

**Work Experience:**

New England Venture Resource Group, since 1986. President of business consulting practice which provides a wide range of services to small business owners, accountants, and lawyers. As an appraiser he has valued 477 small and midsize businesses; as a broker has been the agent in over 100 business transfers; organized first New England data base of actual sales transactions; as a consultant has organized 4 startup companies all of which have been successful.

Andover Chocolate Corporation. President and majority owner of confectionery manufacturing business; organized an LBO for selected assets of American Safety Razor. Operations included franchise network of 50 stores, manufacturing, and national distribution of Barton's Chocolates. Acquired specialty confectionery company with synergistic line; relocated production operations, introduced new premium box chocolate line that became #2 market share behind Godiva within 1 year.

American Safety Razor Corp. President of Bartons Inc.; managed confectionery operations and participated in acquisition and consolidation of several small chocolate confectionery companies into a single operating entity in Boston, Massachusetts. Took a public company private. Relocated 400-employee operation from New York to Boston.

Standard Brands Inc. President, Curtiss Candy Division, (1200 employees). Directed division through a major growth period during which both profits were increased from $4M to $18M per year and cash flows were increased to levels which were 3 times industry benchmarks. Introduced new national confectionery product, and consolidated operations, while making acquisitions of a new factory.

Cadbury Schweppes LTD. President of Cadbury North America; consolidated manufacturing operations of 3 factories and led the acquisition of Peter Paul Candy Corp. a publicly traded company with 7 plants, 1500 employees and $180,000,000 in annual sales. As General Manager of Cadbury Division of Canada was responsible for major turnaround of business. As Vice President Manufacturing, built and started up Cadbury's first USA chocolate factory.

PVO International. Plant Manager of two different vegetable oil processing plants. Largest plant had 600 employees and 500 different products. Led plants through major reorganizations which led to turn around for the corporation.

Procter and Gamble Manufacturing Company. Project Engineer, Staff Chemical Engineer, and Production Manager of Detergent Making, direct management responsibilities for operations, personnel and construction of synthetic detergent making, vegetable oil processing, and specialty chemical processing in Sacramento and Long Beach, California plants.

US Army 1st Lt. Infantry Platoon Leader, Company Executive Officer, Company Commander, Staff Intelligence Officer. Served in Korea, Alaska, and Washington.

**Awards, Committees, and Presentations:**

Institute of Business Appraisers, Best Demonstration Report of the year 2003.

Presenter, of "Alarm Bells for Hidden Income," IBA Business Valuation Conference, 2003 and IBBA Conference 2004.

Instructor International Business Brokers Association, for business valuation courses 120, 130, 210, 220, and 22. Since 2003 have taught 15 classes for a total of 152 class hours.

International Business Brokers Association, Lead Subject Matter Expert for business valuation courses, 210, 220, and 221. Position is responsible for maintenance of course content across all instructors.

New England Business Brokers Association, (Director and Past President) Chair Education Committee.

International Business Brokers Association, Chairman's Award 2004, for contributions to education program.

**Expert Witness Qualifications:**

Family Court, Rockingham County, New Hampshire 1998, 2001.

United States Bankruptcy Court, Boston, 1995.

**Education**:

University of California, Berkeley, California, BS, Chemical Engineering, Honor Graduate Army ROTC.

**Business Valuation Education:**

Master Class in Expert Testimony, 2006, 56 Hours, Institute of Business Appraisers, Phoenix, AZ, Steven Schroeder.

Advanced Business Valuation Conference, 2005, 21 Hours, American Society of Appraisers, Las Vegas.

Business Valuation Caucus, Oct. 2005, 7 Hours, Institute of Business Appraisers, Nashua, NH.

Litigation Support Course 1019, 2005, 16 Hours, Institute of Business Appraisers, Nashua, NH, Michele Miles.

IBA Business Valuation Conference, 2005, 16 Hours, Institute of Business Appraisers, Orlando, FL.

Business Valuation Caucus, Oct. 2004, 7 Hours, Institute of Business Appraisers, Boston, MA.

Advanced Business Valuation Conference, 2004, 16 Hours, American Society of Appraisers, San Antonio, TX.

Train the Trainer, 2004, 24 Hours, International Business Brokers Association, Dallas, TX, Wayne Coleman.

IBA Business Valuation Conference, 2004, 17.5 Hours, Institute of Business Appraisers, Las Vegas, NV.

Financing the Acquisition, 2004, 8 Hours, IBBA Course 307, Philadelphia, PA, Henry James.

National Uniform Standards of Professional Appraisal Practice, USPAP, 2004, 7 Hours, American Society of Appraisers, Sturbridge, MA, Roger Durkin.

Advanced Business Valuation Conference, 2003, 22 Hours, American Society of Appraisers, Chicago, IL.

IBA Business Valuation Conference, 2003, 24.5 Hours, Institute of Business Appraisers, Orlando, FL.

Appraisers as Expert Witnesses ALL303, 7 Hours, American Society of Appraisers, Sturbridge, MA, Roger Durkin.

Advanced Business Valuation Conference, 2002, 18 Hours, American Society of Appraisers, Orlando, FL.

The Appraiser and Litigation Support, 2002, 4 Hours, American Society of Appraisers, Nashua, NH, Michele Miles.

Business Valuation Selected Advanced Topics BV204, 2002, 30 Hours, American Society of Appraisers, Vienna, VA, Shannon Pratt, Roger Grabowski, Claire Donias.

Business Valuation Case Study BV203, 2002, 30 Hours, American Society of Appraisers, Lisle, IL, Gary Trugman, Terry Allen.

The Condition of our National, Regional, and State Economies, 2002, 4 Hours, American Society of Appraisers Boston Chapter. Sturbridge MA, Dr. Edward J Deak.

Tax Boot Camp for the M&A Professional, 2002, 8 Hours, International Business Brokers Association, New Orleans, LA, Darrell Arne.

Tax Issues of General Business Brokerage, 2002, 8 Hours, International Business Brokers Association, New Orleans, LA.

Basic Valuation Methods, 2002, 8 Hours, International Business Brokers Association, New Orleans, LA, Jeff Jones.

Introduction to Business Valuation BV202, 2002, 30 Hours, American Society of Appraisers, Lisle, IL, Susan Gillette.

IBA Business Valuation Conference, 2002, 28 Hours, Institute of Business Appraisers, Washington DC.

Introduction to Business Valuation BV201, 2002, 30 Hours, American Society of Appraisers, Lisle, IL, Gary Trugman and Robert Schlegel.

Introduction to Business Valuation, 2001, 8 Hours, International Business Brokers Association, Auburn, MA, Jeff Jones.

Report Writing and Analysis, 2001, 16 Hours, Institute of Business Appraisers, Atlanta, GA. Chris Mellen.

Advanced Business Valuation Conference, 2001, 16 Hours, American Society of Appraisers, Seattle, WA.

Analyzing and Recasting Financial Statements, 2000. 15 Hours, International Business Brokers Association, Auburn MA. Paul Boudo.

National Uniform Standards of Professional Appraisal Practice (USPAP) 1999, 15 Hours, American Society of Appraisers, Boston, MA.

Basic Business Appraisal, a self study course, 1996, Institute of Business Appraisers.

Using Transaction Data to Value Closely Held Businesses, 1995, 8 Hours, Institute of Business Appraisers, Boston, MA. David Bishop.

How to Value Mid-Size and Smaller Businesses, 1995, 8 Hours, Institute of Business Appraisers, Boston, MA, David Bishop.

Certified Business Opportunity Appraiser training and examination, 1990, 21 Hours, American Business Consultants, Auburn, MA, Wilfred F. Tetreault.

Mergers, Acquisitions, and Business Evaluation, VR Business Brokers, 1988, 30 Hours, San Antonio, TX.

# EXHIBIT 2

Warren S. Burkholder, Jr.
231 Sutton Street, Unit 2K
North Andover, MA 01845
978-975-7600

March 1, 2007

Attorney John Barker
Michienzie & Sawin LLC
745 Boylston Street
Boston, MA 02116

RE: Pritchard v. TrafficCast, Massachusetts Federal Court, Eastern District of Massachusetts, Docket No. 05CV-11135-MLW

Attorney Barker,

I have been retained to value 1,848,000 shares of common stock interest in TrafficCast Inc., *the Business*, a Wisconsin corporation. This appraisal is to be used in settlement or litigation of claims of Robert D. Pritchard against TrafficCast which include among other things the value of the common stock he owns in *the Business*. This report is not intended for any other use, and the conclusions found herein may not be applied to other purposes without additional consideration of all the relevant facts.

There are two effective dates of the value, October 1, 2002, the stated date on which Mr. Pritchard's employment was terminated by *the Business*, and February 26, 2007, a current date reflective of most, if not all, relevant current events. Events which have occurred after February 26, 2007 may be noted, but have not been included in the considerations of value.

TrafficCast Inc. is controlled by Bin Ran and Jing(Connie) Li and has as affiliates and/or subsidiaries TrafficCast International Inc., Traffic Cast International Investors LLC, and Transmart Technologies, Inc., all of which are located at 2801-2 Coho Street in Madison, Wisconsin. Additionally, there is a business entity known as TrafficCast China (Shanghai) Co., Ltd. The current relationship between these various business entities is not known. Until July 2006, press release activity of *the Business* focused on TrafficCast, Inc. Since July 2006, the press release activity has been on TrafficCast International, Inc. However, the press release contents seem to blur any distinctions between the two. There was a TrafficCast China, Inc. formed in 2004 by Bin Ran, and it was dissolved in 2005 without comment. For this report it is assumed that the value of TrafficCast, Inc. is inseparable from all of the above affiliates without regard to any agreements to the contrary that may exist between those affiliates and differences in the shares of ownership.

The Subject Interest of the common equity of TrafficCast Inc. represents a non-controlling and non-marketable interest in *the Business*.

The Standard of Value best describing that applicable to the Subject Interest is "Fair Value." In Wisconsin Statute 180.1301 (4) Fair Value is defined as the

> Value of the shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable. With respect to a dissenter's shares in a business combination, means market value --- the fair market value as determined in good faith by the Board of Directors of the resident domestic corporation.[1]

In Massachusetts the corresponding statute is 156D sec. 13.01, and it says that Fair Value is the

> Value of the shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable.[2]

The choice of law that will apply to the establishing value has not necessarily been established. However, TrafficCast brief's have expressed its preference for Wisconsin Law over Massachusetts.

As used here, the definition of Fair Value includes the assumption that no discounts for lack of control or liquidity would be applied to the Fair Market Value of the business entity as a whole in determining the value of the Subject Interest.

The premise of value is that of a going concern. Under this premise, it is assumed that the Subject Interest is sold as common shares with voting rights proportional to the shares and as part of an income-producing business enterprise. This premise of value contemplates the mutually synergistic relationships of *the Business's* tangible assets to the intangible assets.

This report is based on an incomplete analysis of *the Business* and all related facts and circumstances. In accordance with *Uniform Standards of Professional Appraisal Practice* dated July 1, 2006, this report includes Extraordinary Assumptions which presume as fact otherwise uncertain information, physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis.[3] Included in these assumptions is the lack of any financial information about the operations of *the Business* and its affiliates which would allow for the application of traditional measures of value to the Subject Interest. Further, the number of shares outstanding is unknown.

A profile of *the Business* currently provided by the company as part of a press release and posted to the Internet by Directions Magazine says:[4]

> TrafficCast International is the leading provider of digital traffic data, with patented software and predictive models to produce route-specific real-time traffic information and travel time forecasts for traditional and emerging traffic

---

[1] Jay E. Fishman, Shannon P. Pratt, and William J. Morrison, *Standards of Value Theory and Applications*, (New Jersey, John Wiley & Sons, 2007) 298.
[2] Ibid, 288.
[3] Appraisal Foundation, *Uniform Standards of Professional Appraisal Practice*, 2006, lines 84 -87.
[4] Directions Magazine, <http://www.directionsmag.com/companies/TrafficCast_International/2/28/2007>

information markets. The company aggregates data from over 350 sources. These include strategic partners Westwood One/Metro Networks, the dominant provider of real-time incident data in the U.S. and Weather Central/MyWeather LLC, the leader in both precision weather forecasting data graphic display tools for on-air and on-line. TrafficCast China, a sister company of TrafficCast International, is currently testing its technology in Shanghai for deployment in a national traffic system in China. TrafficCast International is based in Madison, WI. For more information visit www.trafficcast.com.

The founders of *the Business* are three individuals: Jing (Connie) Li, Bin Ran and Robert D. Pritchard. Bin Ran was the Incorporator on July 2, 1999 within the State of Wisconsin. The first Organizational Meeting of the Board of Directors was held on March 28, 2000 in Madison, WI. The minutes of that meeting reflect that directors elected Robert D. Pritchard as President, Bin Ran as Vice President and Treasurer, and Jing (Connie) Li as Secretary. At a subsequent date before October 19, 2000, Mr. Pritchard's title was changed to Executive Vice President, that of Jing (Connie) Li changed to Chief Operating Officer, and Bin Ran to Chief Executive Officer.

Bin Ran and Jing Li hold US Patent No 6,209,026 B1 which was filed March 7, 1997 and extends for 20 years. The Abstract describes the invention as an Internet utility which receives information about a proposed trip including trip origin, destination and time. The Web-based utility calculates at least one route and provides periodic automatic updates of information related to the route such as traffic and weather conditions.

Bin Ran holds US Patent No. 6,317,686 which was filed July 21, 2000. This invention is a traffic information system for predicting travel times utilizing Internet-based collecting and dissemination of information.

Together, these patents give *the Business* significant protection on what was estimated to be as much as 50% of the US traffic information market in December 2000.[5] This assumes that *the Business* has an agreement with the patent holders, Ran and Li, to assign the patents to *the Business* and that all of the benefits of ownership arising from the patents would accrue solely to *the Business* without fee or royalty.

The Value of *the Business* is highly speculative without regard to any specific date. In January 2000 Bin Ran valued TrafficCast based on the value of TrafficOnLine, a product controlled by TrafficCast, that TrafficWays.com, offered to acquire for a reputed $2 to $3 million. From this offer and comparisons of the then characteristics of *the Business*, Ran concluded that TrafficCast, Inc. should be valued at $30 million.[6] He further speculated that he should be able to raise $85.7 million of cash in an IPO.

On May 4, 2000 *the Business* received a Letter of Intent for the Acquisition of TrafficCast by InfoMove.com. The proposal was for $7 million for 100% of the company of which $750,000 was to be paid in cash and the balance in shares of InfoMove common stock.[7] Pritchard has

---

[5] Bin Ran, e-mail to R. Pritchard 28 Dec. 2000, reference document PRIT 00529.
[6] Bin Ran, *TC Stock Valuation, Revised Jan. 24, 2000*, reference document PRIT 00469-00470.
[7] Peter Holland CEO of InfoMove Kirkland, WA, 4 May 2000, reference document PRIT 00095-00098.

advised me that a subsequent verbal offer of $8 million for 100% of the company of which $2,000,000 was to be paid in cash with the balance in shares of InfoMove common stock. These offers were not pursued, and no subsequent offer was made.

Between August 2000 and November 2000, *the Business* sold small blocks of common stock to at least three different individual investors. The sale price on those transactions was $1 per share.[8] This share price extrapolated to 9 million shares would suggest a value of $9 million was thought to be acceptable at this time by the Board of Directors.

In its Business Plan dated September 2001, *the Business* makes both financial projections for the current year and future years. The projections are reported on page 36 and 37 of the plan. They reflect *the Business* moving from a loss in 2001 to profitability in 2002. The plan states that future shares will be sold for $2 per share and that the resulting valuation of the outstanding shares will be $19.5 million after the sale of 750,000 shares to new investors.

In June 2001, UBS Warburg, an international investment bank, issued the research report: United States Traffic Data Market Study.[9] This study discussed various aspects of the US market as well as expressing opinions of TrafficCast's position in the market. They saw *the Business* as the think-tank of the traffic industry. They also questioned if the company could succeed with a limited number of quality customers. They speculated that the market for these services would grow into a $7 billion industry with a few dominant players or companies.

Part of the Walburg study was a listing of eleven different companies that compete in the market with their annual revenues and their market capitalization values.[10] For the four publicly traded companies listed, the ratio of Market Capitalization to Annual Revenues ranged from 9.1 to 1, to 3.6 to 1. All of these companies were then larger than *the Business* projected to be by 2005. If the lowest of these ratios were used to estimate the value of *the Business* based on its 2002 Optimistic Revenue estimate of $2.6 million, the market value of TrafficCast would be $9.4 million.

In 2006 a competitor of *the Business*, Traffic.com, had an Initial Public Offering.[11] Based on its reported earnings, outstanding shares, and the share price on February 26, 2006, the Market Capitalization to Revenue ratio for the company was 3.1 to 1. Traffic.com reported an annualized revenue of $52 million and a Market Capitalization of $162 million.

In November 2006, *the Business* released information that it had received a $250,000 angel fund investment from Phenomenell Angels Fund, a woman-based angel fund in Wisconsin. In January 2007 *the Business* announced that it had received a $1 million Line of Credit from Silicon Valley Bank.

Without adequate disclosure from *the Business* as to its financial history, its current capitalization structure, and its intra-company activities, it is not possible to determine a value of the Subject Interest in conformity with the *Uniform Standards of Professional Appraisal Practice*.

---

[8] Connie Li, Receipt of Angel Round Investment Letters, reference documents PRIT 00489, 00515-00516.
[9] UBS Walburg LLC, *United States Traffic Data Market*, 26 Jun. 2001, reference document PRIT 00324-00363.
[10] Ibid, PRIT 00328.
[11] Traffic.com, 2005 Form 10-K, Annual Report to the Securities Exchange Commission.

However, it is possible to say that the Board of Directors of *the Business* have acted in a fashion to consistently suggest to investors and employees that the value of the common stock was at least $1 per share in 2000 and $2 per share in 2001. They also reasoned that at an Initial Public Offering they might realize a price of $10 per share. Assuming that these communications were in good faith, then it is reasonable to conclude that the Board of Directors found the market value of the common stock to be $1 and $2 accordingly. Further, there is no known communication which would suggest that they believed the stock had devalued in 2002.

Between 2001 and 2007 the company has been issued two of its three patent requests, formed business partnerships with many a number of "players" in the marketplace to produce revenue and obtain additional data sources, launched a major project in Shanghai, China, found additional investors, and launched new product and service offerings for new markets. In this same period the securities market has recovered from the collapse of the "dot-com" bubble, is accepting in increasing numbers Initial Public Offerings, and has become more aggressive in the private equity market. All of these conditions suggest that the probability of *the Business* finding an investment partner in the future is better than it has ever been for the stockholders.

In summary, I find that the Fair Value for Subject Interest to be indeterminate from the documentation available at this time; however, it is reasonable to assume that the Board of Directors held the value of the stock to be between $1 and $10 per share over this period in question. There is significant evidence in the market that other companies in the same line of business are realizing similar values for their common stock equity when sold. This would place the value of the Subject Interest of 1,848,000 shares between $1.8 million and $18 million.

On receipt of the requested documentation, I am prepared to develop a more comprehensive report as a supplement to this preliminary report.


Sincerely,

Warren S. Burkholder, Jr.
CBI, CBA, ASA

Attachments:

Certification
Appraiser's Qualifications

# Appraiser's Certification
Appraisal of TrafficCast, Inc. March 1, 2007

I certify that to the best of my knowledge and belief:

1. The statements of fact in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal impartial and unbiased professional analyses, opinions and conclusions.

3. This appraisal was performed on a basis of non-advocacy, and the appraiser has no present or prospective interest in the property that is the subject of this report and has no personal interest with respect to the parties involved.

4. The appraiser's compensation is not contingent on an action or event resulting from the analysis, opinions, or conclusions, or the use of the report.

5. The analyses, opinions, and conclusions were developed and this report was prepared in conformity with the Code of Ethics and Business Appraisal Standards of the Institute of Business Appraisers, the Principles of Appraisal Practice and Code of Ethics of the American Society of Appraisers, and the Uniform Standards of Professional Appraisal Practice in effect as of the date of this report.

6. No person provided significant professional assistance to the person signing this report.

7. The appraiser neither visited *the Business* site nor interviewed management.

8. The American Society of Appraisers and The Institute of Business Appraiser both have mandatory recertification requirements for their senior appraisers with which this appraiser is compliant.

_____

Warren S. Burkholder, Jr. CBI, CBA, ASA

# **EXHIBIT 3**

Warren S. Burkholder, Jr.
231 Sutton Street, Unit 2K
North Andover, MA 01845
978-975-7600

March 1, 2007

Attorney John Barker
Michienzie & Swain LLC
745 Boylston Street
Boston, MA 02116

RE: Pritchard v. TrafficCast, Massachusetts Federal Court, Eastern District of Massachusetts, Docket No. 05CV-11135-MLW

Attorney Barker,

I wish to report my specific experience and publications.

My last appearance in court or at a deposition was in 2001.

I have been the principal author of 3 training manuals for the International Business Brokers Association and a contributor to one other training manual.

The three principal author publications are:

- Analysis and Recasting Financial Statements - Course 210, last revised 2006, property of International Business Brokers Association Chicago, IL.
- Introduction to Pricing Small Businesses - Course 220, last revised 2005, property of International Business Brokers Association Chicago, IL.
- Pricing Small Businesses Level 2 - Course 221, last revised 2005, property of International Business Brokers Association Chicago, IL.

The co-authored publication is:
- Accounting Basics for Business Brokers - Course 130, last revised 2006, property of International Business Brokers Association Chicago, IL.

Sincerely,

Warren S. Burkholder, Jr.
CBI, CBA, ASA